## McConkey *versus* The Commonwealth.

1. If a murder is committed in an attempt to conceal stolen goods, evidence may be introduced at the trial, tending to connect the murder with the robbery, in order to prove the motive and object of the crime, and as part of the history of the occurrence.

2. Where in a trial for murder, the court, referring to the testimony of a witness, which was somewhat contradictory and . involved, said, in substance, that if the 'man had not been so ignorant, and had had a better command of language, "he might have been able to give some plausible explanation of the train of thought which led him to testify as he did." *Held*, not to be error.

3. A further instruction to the jury, that if they believed that certain witnesses had made sworn contradictory statements in regard to facts material to the issue, the testimony might be rejected; and before it was received as a basis for a verdict it should be carefully scrutinized. *Held*, not to be error.

December 11th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

ERROR to the Court of Oyer and Terminer of *Allegheny county :* Of October Term 1882, No. 56.

Indictment of Ward McConkey for the murder of George A. McClure.

At the trial, before BAILEY, J., the following facts appeared : In the latter part of July 1881, the store of George A. McClure, a resident of McKeesport, was robbed. Two days afterward,

August 2d 1881, in company with his partner Wilbert Hendrickson, and Joseph Lynch, he started in search of the stolen goods. They were joined by George A. Fleming. About sunset on the same day, when McClure was separated a short distance from his friends, a party of men attacked and shot him, killing him instantly. Fleming and Lynch also exchanged shots with the murderers. Information was made against McConkey, who was arrested and indicted for murder in the first degree.

William Snyder, a witness called by the prosecution, testified that he heard the firing, and on going to the place saw several men running away; that he afterwards found on the line of their flight a pocket-book containing receipts and papers belonging to McClure, and also several knives, razors and pistols that had been stolen from the store. The district attorney then called one Calhoun, by whom he offered to prove, in corroboration of Snyders' testimony, the finding of knives, razors and the pocket-book and receipts, some of which articles had been identified by Snyder; intending to follow this evidence by showing in the first place that the pocket-book and receipt were those of George A. McClure, and were on his person shortly before his killing. Then, that the other goods found, the revolvers, knives and razors, were the property of Mr. McClure and Hendrickson, and had been stolen from their place on the Sunday night previous to the killing of Mr. McClure, and that part of said goods had been found upon the very ground, and very near the time and place where Mr. McClure was killed, and shortly before the killing, and upon the same day as the killing; to be followed also by testimony that would tend to strongly implicate and connect the defendant with that robbery, and that part of it for the purpose of showing a motive for the killing of McClure, who was, at the time he was there, engaged in searching after his property and the apprehension of the thieves.

Objected to by defendent on the following grounds:

First. No proof of a burglary alleged to have been committed before the murder can be considered in connection with the murder, as fixing the degree of the offence.

Second. As to the pocket-book and papers, supposing them to be hereafter proved to have been the property of Mr. McClure, and to have been upon his person shortly before his killing; that before an alleged robbery can be connected with the crime with which the prisoner is here charged, that of murder, with a view of fixing or determining the degree of murder, it must be shown to the satisfaction of the court and jury that the murder was committed in the perpetration of or attempt to perpetrate the robbery or burglary.

Third. As this testimony does not do that in any degree, it is incompetent and irrelevant.

5 OUTERBRIDGE—27

[McConkey *v.* Commonwealth.]

THE COURT.—Ruling nothing for the present but the admissibility of the evidence—testimony similar to that of Mr. Snyder—such testimony will be admitted. (Fourth assignment of error.)

Lynch and Fleming were also called by the Commonwealth, and their testimony was contradictory as to the number of persons engaged in the affray, and as to the order of firing. Fleming saying that when the "gang" saw Lynch and himself, they immediately fired upon them, and afterwards on McClure; while Lynch affirmed that McClure was shot first, and then the firing was directed to them. It further appeared that Lynch had testified before the coroner that there were six men in the party besides McClure; while at the trial he first said there were five, but on cross-examination again said six. His testimony in regard to recognizing the defendant was also contradictory.

The defendant submitted inter alia the following points :

6th. If the jury believe that the witnesses, Fleming and Lynch have made sworn contradictory statements upon matters material to the issue in this case, then the testimony of said witnesses may be wholly disregarded and rejected by the jury, and if received should be regarded with grave caution.

Answer. "The first clause of this point is affirmed. Under the circumstances stated, if so found by you, the testimony may be rejected by you, and before you should receive and base a verdict upon it, you should carefully scrutinize their testimony here and be sure that you can safely do so." (Second assignment of error.)

7th. If the jury believe that the same witnesses, Lynch and Fleming, have made sworn contradictory statements material to the issue in this case, this would be sufficient in itself to create a doubt as to the reliability of said witnesses in general, and especially as to their alleged identification of the defendant as one of the parties concerned in the killing of George A. McClure.

Answer. "This, in my opinion, does not involve a legal proposition, and hence I do not feel it my duty to answer it categorically. I regard the proposition as more properly addressed to you, and I submit it to your consideration, and request you to pass upon it in connection with what may be hereafter found in the general charge pertinent to the subject." (Third assignment of error.)

In reference to the testimony of Lynch, in the general charge the court instructed the jury as follows :

"But you will, probably, from the appearance and language of this witness, claim that he labors for his daily bread, and has not had much time to devote to belles-lettres and nice scholarship, and has not a great command of language, and that, were

he so cultured, he might have been able to have given at least some plausible explanation of the train of thought which led him to testify as he did. But with all, the true questions, and the only ones of importance upon the matter are, whether you can rely upon his testimony as to the material facts criminating the defendant, or whether you feel bound to reject it." (Sixth assignment of error.)

Verdict, guilty of murder in the first degree, and the prisoner was sentenced to be hanged. Whereupon the defendant took this writ, assigning for error the answers to his points and that portion of the charge above cited :—adding " 7th, the evidence does not prove that the killing was murder in the first degree."

*W. D. Moore* (with whom was *T. H. Davis*), for plaintiff in error.—It was error to admit evidence of a burglary which occurred several days previous to the homicide, to affect the degree of the crime. The Commonwealth must show that the murder was committed in the act of burglary, or in the attempt to commit it. It is not enough to show that it was done in concealing the stolen goods. The witnesses contradicted themselves, as is seen by comparison of their testimony before the Coroner and before the jury, and the charge of the court in reference to this does not accord with the rules of evidence: 1 Greenl. Ev. § 38 ; 1 Taylor Ev. § 171 ; Roscoe Crim. Ev. 120 ; 2 Stark Ev. 12. The court erred in suggesting to the jury, as in the 6th assignment of error, facts not proved in the case, while it admitted that the witnesses contradicted themselves.

*John S. Robb*, District Attorney.—The testimony to connect the murder with the burglary was not offered to affect the degree of the crime, but to establish its motive. It was therefore admissible. Contradictory testimony may go to the jury, because it is for them to decide what credit to attach to it : Mc-Clain v. Commonwealth, 29 Pitts. Leg. J. 228.

Mr. Justice GREEN delivered the opinion of the court, December 30th 1882.

The testimony admitted under the fourth assignment of error was neither offered nor admitted for the purpose of fixing the grade of the crime. The killing did not take place while the burglary was being committed, but two days later. Hence it was no part of the proposed offer of proof that the homicide was perpetrated in the commission of the burglary. But that circumstance would not render the testimony inadmissible if for other reasons it was competent. In point of fact the evidence offered, and that which had been previously given without objection by the witness Snyder, constituted in part the history of

the transaction. The deceased in company with others had gone out in search of certain goods that had been stolen. He was engaged in this search at the time he was killed. The witness Snyder had heard the shots at a distance, and having started for the scene of the occurrence saw several men fleeing from the direction of the place. Afterwards, in going over the line of the flight, he discovered certain articles, knives, razors, pistols and a pocket-book containing papers of the deceased, lying on the ground at different places, apparently on the line of the flight. Another person, named Calhoun, was with him at the time and saw the articles as they were discovered. Snyder had delivered his testimony without objection, and then Calhoun was called to testify to the same facts. It was to his testimony the objection was made. The offer of proof was in corroboration of Snyder and it was explanatory of the facts of the case. We see no reason why it was not competent. The articles were connected directly with the deceased. Certain receipts made to the deceased in his own name, were a part of the papers found, some in the pocket-book and others lying in the immediate vicinity. Without question it was entirely proper to prove the discovery of these articles shortly after the homicide, in close proximity to the place where it occurred, and in the line of flight of certain persons who were seen running from the locality immediately after the offence was committed. Other testimony was given to connect the defendant with the crime. The learned judge of the court below carefully instructed the jury that this testimony could not be considered, as fixing the grade of the crime, unless the murder was connected with and related to a robbery, committed at the same time. It was not pretended that the previous burglary could be used for that purpose.

We see no error in the comments of the court in relation to the testimony of the witness Lynch. The contradictions in his testimony were referred to, his want of frankness was stated, his credibility was left entirely to the jury, as it should have been, and they were told that they might reject it altogether, if they felt bound to do so. The jury saw the witness and heard his testimony and were the best judges as to the degree of credit to be given to his statements. The suggestion of the court, which is complained of, was nothing more than a comment upon his apparent want of culture and a consequent lack of fluency in explaining some apparent contradictions in his testimony. The assignment is not sustained.

The answers to the defendants' sixth and seventh points were clearly right. The sixth point was affirmed without qualification as to its first clause, and substantially as to the last. The very caution was given which was asked by the point. So also

as to the seventh point.   It contains no legal proposition, and all the effect to be attached to material contradictory statements in the testimony of the witnesses had been already expressed in the answer to the sixth point, in which the jury were told that they might for that reason reject such testimony altogether.   Of course if they might absolutely reject it, they would be at liberty to have doubts about it.   Whether the particular contradictory statements relied upon, would actually create a doubt in the minds of the jury was a matter exclusively for them to determine.   There might be explanatory statements in the other testimony of the witnesses or in the other testimony in the case which would mitigate or remove any doubt, and of this the jury alone could judge.

The other assignments are not pressed and are without merit.   The seventh raises a question which was entirely for the jury, and they have determined the degree of the offence upon testimony which, if believed, was quite sufficient to justify their finding.

The judgment of the Court of Oyer and Terminer of Allegheny county is affirmed, and it is ordered that the record be remitted to said court for the purpose of carrying the sentence into execution.