D. H. BAYSINGER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon January 25, 1886.*

1.  DISCONTINUANCE OF TOWNSHIP ORGANIZATION—*duty of town officers as to the disposition of the town records—and what is a town record.* Section 25, of chapter 139, relating to township organization, imposes the duty upon all township officers who have in their possession any records pertaining to their respective offices, to deposit them in the county clerk's office in case the township organization system shall be discontinued in their county, and this without any demand or request.

2.  Under that section, the town officer, however, is not required to deliver the records held by him, to the county clerk personally, but to deposit them "in the county clerk's office." A delivery to a party in charge of the county clerk's office, whether the clerk himself, or a deputy, or even a temporary custodian, if made in good faith, will exonerate the officer making it from all liability under section 216 of the Criminal Code.

3.  Section 104 of the same chapter of the Revised Statutes, makes it the duty of each supervisor "to keep a just and true account of the receipts and expenditures of all moneys which shall come into his hands by virtue of his office, in a book to be provided for that purpose at the expense of the town," which "shall be delivered to his successor in office." This makes the supervisor's book a record of his town, which it is his duty, on the discontinuance of the township system, to return to the office of the county clerk, without a demand or request from any one.

4.  SAME—*criminal liability of town officer for withholding records—of the elements of the offence.* By section 216 of the Criminal Code, the failure or neglect of a supervisor of a town, upon the discontinuance of the township system in his county, to deposit in the county clerk's office the record or book in which were kept his accounts with the town, is made an indictable offence. It is not necessary to a conviction under this section, that any request or demand shall be made on him for such book by any person, and his neglect to return the same to the county clerk is sufficient to show a willful and unlawful withholding and detention thereof from the person entitled thereto by law.

5.  SAME—*of the indictment in such case.* In an indictment under section 216 of the Criminal Code, against an officer for not returning a record of his office to the county clerk, it is sufficient to aver, generally, that on a certain day his office was abolished, without stating in what manner it was abolished, that being a matter of proof.

6. A count of an indictment framed on that section of the Criminal Code, charged, in substance, that the defendant was holding the office of supervisor in and for the town of G., etc., on the first day of January, 1883; that on that day his said office was abolished by law; that the defendant so being supervisor, kept a book which was a part of the records of the town; that he was the lawful custodian of said book, and that the same contained an account of the receipts and expenditures of all moneys which came into his hands by virtue of his office of supervisor of the town of G.; that the defendant "did then and there feloniously, willfully and unlawfully withhold and detain said book from the office of the county clerk of the said county of," etc., "the said office of county clerk then and there being the lawful depository of said book:" *Held*, that the count was substantially good, and that the latter clause was equivalent to a direct averment that the defendant withheld and detained the book from the county clerk.

7. It is a principle of pleading that whatever is included in or is necessarily implied from an express allegation, need not be otherwise averred. So an allegation in an indictment of the detention of a record from the office to which it belongs, necessarily implies a detention of it from the officer or lawful custodian of the same.

8. PRACTICE—*improper remarks of State's attorney in argument to the jury.* On the trial of an indictment of a supervisor for unlawfully withholding a record from the proper custodian, the State's attorney, in his closing remarks to the jury, charged the defendant with stealing an affidavit made by him at a previous term of court for a continuance, and reiterated the same after objection by defendant and being warned by the court that it was improper, and stated that the defence was all a sham, and that defendant had fled from justice and never surrendered himself until he found a witness was dead, and then hatched up his rotten defence. There was no evidence upon which to base such remarks, and they were reiterated after being informed by the court that they were improper: *Held*, that such remarks were clearly improper, and a breach of both professional and official duty.

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. ROBERT W. MCCARTNEY, Judge, presiding.

This was an indictment found December 13, 1883, against D. H. Baysinger, under section 216 of the Criminal Code. A trial was had, resulting in a conviction of the defendant. The defendant filed an affidavit in support of a motion for a new trial, showing newly discovered evidence, and that "the State's attorney, in his closing speech, untruthfully charged defendant with stealing an affidavit made by affiant at a pre-

vious term of court for a continuance, and although defendant, by his counsel, objected to said statement, said attorney, after being warned by the court that it was improper, reiterated the statements in the presence and hearing and to the jury; that said State's attorney also went outside of the evidence, and stated to said jury that the defence of defendant that his son had delivered said book to Don Johnson, was all a sham, as they (the jury) could see, for the reason that the name of Don Johnson was originally on the back of the indictment, and that said Don Johnson was one of the principal witnesses upon whose evidence the grand jury found said bill of indictment; that the name of said Johnson could not be placed upon the back of said indictment as a witness by the foreman of the grand jury or State's attorney, unless he (said Johnson) had been a witness before said grand jury; that said State's attorney also stated that defendant had fled from justice, and never surrendered until he found that said Don Johnson was dead, and then hatched up this rotten defence; that each and all of said statements, as made, were wholly outside of the evidence, and without any evidence whatever even tending to support said statements that Don Johnson was before the grand jury, or ever gave evidence, or that defendant stole said affidavit; that defendant, by his counsel, called the court's attention, and objected, but that said attorney, after being told by the court that such statements were improper, kept on making them; that they were wholly untrue, greatly prejudiced the jury that convicted defendant, and largely contributed toward producing the unjust verdict rendered by them."

The court overruled a motion for a new trial and also a motion in arrest of judgment, and defendant excepted.

Mr. F. E. ALBRIGHT, for the plaintiff in error.

Mr. ROBERT J. McELVAIN, State's Attorney, and Mr. WILLIAM A. SCHWARTZ, for the People.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the Court:

On the 29th day of August, 1885, D. H. Baysinger, the plaintiff in error, was tried and convicted, in the Jackson county circuit court, for a violation of the 216th section of the Criminal Code, the jury fixing the term of his confinement in the penitentiary at one year. The accused was formally sentenced in conformity with the verdict, and the present writ of error is brought to reverse that sentence.

Numerous errors are assigned in the record, some of them presenting objections of a highly technical character, and clearly not tenable. Others are of a more serious character.

It appears that the defendant had been elected to the office of supervisor of Grand Tower township, in said county, and that subsequently, by a vote of the electors of the county, township organization was abolished, and that his office as such supervisor, by operation of law, thereupon ceased; that upon his office being thus determined, the county authorities made various ineffectual efforts to get possession of the "supervisor's book," being the same in which the defendant kept his accounts with the town, and which it is claimed would show him to be in arrears with the town $107.05. These efforts having failed to secure a return of the book to the clerk of the county court, the defendant was thereupon presented to and indicted by the grand jury, under the section of the statute above stated.

The only question about which we have had any serious doubt, is the sufficiency of the indictment. The section upon which it is founded is as follows: "If any person whose office shall be abolished by law, * * * shall willfully and unlawfully withhold or detain from his successor, or other person entitled thereto by law, the records, papers, documents, or other articles of property appertaining or belonging to such office, * * * the person so offending shall be imprisoned in

the penitentiary not less than one year nor more than five years." This section, however, must be considered in connection with section 25, chapter 139, of the Revised Statutes, which provides that "where township organization is discontinued in any county, the records of the several towns shall be deposited in the county clerk's office," etc. This section obviously imposes the duty upon all town officers who have in their possession any such records pertaining to their respective offices, to deposit them in the county clerk's office. The 104th section of the same chapter requires a supervisor to "keep a just and true account of the receipts and expenditures of all moneys which shall come into his hands by virtue of his office, *in a book to be provided for that purpose at the expense of the town, and said book shall be delivered to his successor in office.*" From this section it is clear that the book mentioned in the indictment is one of the records of the town, and that it was the duty of the defendant, on the discontinuance of township organization, to return it to the office of the clerk of the county court. The duty to return it was imperative and absolute, and in no sense dependent upon a demand or request from any quarter.

In the light of the several provisions of the statute above cited, we will now turn our attention to the indictment. The first count alleges, in language not to be misunderstood, the following facts, namely: That the defendant was holding the office of supervisor in and for the town of Grand Tower, etc., on the 1st day of January, 1883; that on that day his said office was abolished by law; that the defendant, so being supervisor, kept a book, which was a part of the records of the town; that he was the lawful custodian of said book, and that the same contained an account of the receipts and expenditures of all moneys which came into his hands by virtue of his office as supervisor of the town of Grand Tower, and that the defendant "did then and there, feloniously, willfully and unlawfully, withhold and detain said book from the office

of the county clerk of the said county of Jackson, and State of Illinois, the said office of county clerk then and there .being the lawful depository of said book." A motion to quash was sustained as to the second count, and the third is substantially like the first.

The first and third counts which were sustained by the court are, in some respects, very inartificially drawn, yet on a careful consideration of them we think they severally contain all the facts essential to a good indictment under the statute. The concluding averment in the first count, which is set out *in hæc verba* in the above summary of what that count contains, is the one that has given us most trouble, and given rise to most serious doubts. It will be observed the statutory offence consists in the defendant willfully and unlawfully withholding or detaining a record, or other article of property. pertaining to his office, from "his successor, or *other person entitled thereto by law.*" The present case of course falls within the latter clause, and it will be observed that it is not expressly averred in the concluding part of the count set out *in hæc verba*, nor, indeed, in any other part of it, that the book in question was detained *from any person.* The averment is that the book was detained from the office of the county clerk. Now, to sustain the count, we must be able to say that the averment, as made, was, in legal effect, equivalent .to a direct charge that the defendant detained or withheld the book from some one; and as the court will judicially take notice that the person to whom the delivery should have been made was the clerk of the county court, the question resolves itself into this : Is the charge in the indictment, in legal effect, equivalent to a direct averment that the defendant withheld and detained the book from the county clerk ? It is a principle of pleading, that whatever is included in or necessarily implied from an express allegation, need not be otherwise averred. Now, as the detention of a record from the office to which it belongs of necessity

detains it from the officer or lawful custodian of the record, we have, on this principle, reached the conclusion that the averment is sufficient. This view is certainly strengthened by the language of the 25th section of chapter 139 of the statute above cited. By that it will be perceived the defendant was not required to deliver the book to the county clerk personally, but he was required to deposit it "*in the county clerk's office.*" This form of expression was doubtless used to enable parties to comply with the law by making the delivery to the party having charge of the office for the time being, whether it was the clerk himself, a deputy, or even a temporary custodian of the effects of the office. A delivery of a record to any one in apparent control of the office, if made in good faith, would clearly exonerate the party making it from all liability under the 216th section of the Criminal Code, and would be a strict compliance with the requirements of the 25th section of the Township Organization act. The averment, therefore, that the defendant withheld and detained the book from the office, not only negatives a delivery to the county clerk personally, but also a personal delivery to a deputy, or even to a third party having a temporary control of the office, and in this respect it is really more comprehensive than if the charge had been that the defendant withheld and detained the book from the county clerk.

But conceding the indictment might not be sufficient according to the strict rules of pleading as they exist at common law, we are of opinion there is little, if any, ground to doubt that it fully meets the requirements of the 408th section of the Criminal Code, which declares that "every indictment and accusation of a grand jury shall be deemed sufficiently technical and correct which states the offence in the terms and language of the statute creating the offence, or so plainly that the nature of the offence may be easily understood by the jury." Now, that the defendant, court and jury all well understood, from the indictment, that the offence with which

he was charged was his failure to deposit the book in the county clerk's office,—or, in other words, was his failure to deliver the book to the county clerk,—is too clear to admit of serious doubt. As we have already seen, to have deposited it with any one having charge of the office, would, in legal effect, have been a delivery to the clerk, hence a failure to so deposit it was a failure to deliver it to him.

It is also claimed the indictment is defective in not averring the book was demanded of the defendant, and section 93 of the Township Organization act is referred to as sustaining that view. This is clearly a misapprehension. That section, as well as the two immediately succeeding it, apply only to cases where there is a successor in office. In that case the successor is required to make a demand. Here there was no successor, and could be none, for the office was abolished. As already stated, the duty of the defendant to deliver the book to the county clerk, or to deposit it in his office, which means the same thing, was imperative and absolute, independent of a demand or request from any one. There is no law making it obligatory upon the county clerk or any one else to make a demand in such case.

It is further objected that the indictment should have shown, by express averments, the manner in which the defendant's office was abolished. There is nothing in this objection. That was matter of proof, and that the people are not in default so far as that is concerned, is fully shown by the stipulation of the parties in the record.

Complaint is also made of the instructions. We perceive no serious objection to them, nor is any pointed out. On the whole, we think they fairly laid down the law to the jury as applicable to the case before them.

The point is also made that the People's attorney indulged in improper remarks in his closing address, calculated to prejudice the jury, and place the defendant at a disadvantage before them. The remarks to which exceptions are taken

were clearly improper, and a manifest breach of both professional and official duty; yet, under the circumstances, we do not regard them of so gross a character as to warrant a reversal of the cause for that reason.

As to the claim the evidence does not support the finding of the jury, it is sufficient to say it was the peculiar province of the jury to pass upon the weight of evidence and the credibility of witnesses, and to render such a verdict as their own judgments and consciences, under the law, approved. This duty has been performed, and we must presume honestly; and after a careful consideration of the whole of the evidence, we are ·unable to say that the finding of the jury is so clearly wrong as to warrant a reversal of the judgment on that ground.

The other points made by defendant's counsel we do not think are well taken, or of sufficient importance to require special notice.

The judgment will be affirmed.

*Judgment affirmed.*