## STATE v. PHELPS.

1.　Where it affirmatively appears from the record that a defendant was neither surprised, misled, nor predjudiced, a motion to quash an indictment on the ground that the name of Moses C. Felker, a witness called and examined before the grand jury, was not indorsed thereon, was properly overruled, when the name Dr. Felker, by mistake, was written instead of Moses C. Felker, and the evidence offered by defendant in support of the motion to quash conclusively shows that the witness was

a physician, and for many years had been known and addressed as Dr. or Doc. Felker, and that both the defendant and his counsel clearly understood who was designated, and were fully apprised from the name upon the indictment that Moses C. Felker would appear as a witness on the part of the state in response to the name Dr. Felker, and it was not error to allow such witness to testify upon the trial.

2. A motion to quash an indictment on the ground that the regularly appointed deputy state's attorney, who appeared before the grand jury, and examined witnesses, and performed all the other duties of a state's attorney, was not at least 25 years of age, was properly overruled, for reasons given in the opinion.

3. All distinctions between an accessory before the fact and a principal are by the statute abrogated, and one who procures another to commit a felony, or is concerned in the commission thereof, though not present, must be indicted, tried and punished as a principal.

4. The evidence of an accomplice otherwise competent is admissible, and when corroborated by the testimony of other witnesses, forcibly tending to connect the defendant with the commission of the offense charged, is sufficient to sustain a conviction.

5. In the absence of a statutory limitation as to the extent to which an accused person testifying in his own behalf can be cross-examined, a defendant who does not claim his privilege, but testifies in his own behalf, and without reservation upon all the issues, may, within the discretion of the court, be cross-examined concerning matters which tend to impugn his moral character, or lay the foundation for impeachment. The rules which apply to other witnesses in that regard apply with equal force to him.

6. Evidence directly tending to establish the guilt of a person being tried upon an indictment for a felony is not incompetent for the sole reason that it tends to prove the commission of other offenses, when such evidence goes to the question of motive, intent, or guilty knowledge, or relates to a plan or scheme by and through which the accused procured the crime to be committed.

7. Statements made by a person accused of a crime, together with his demeanor at the time of being placed under arrest, are always open to inquiry when not made under *duress* or induced by menace or promise of immunity; and the statements of counsel offering such testimony that he desired to introduce the same for a purpose which appears immaterial would not, for that reason alone, render such evidence inadmissible.

8. Where a dispute arises between counsel as to the exact testimony of a

witness, and the matter is brought to the attention of the court by a timely objection, the presiding judge may, in his discretion, settle it by reference to the reporter's notes; or he may submit the matter to the recollection of the jury, with the cautionary instruction that they do not consider the argument of counsel as to facts in issue, unless it recites the statements of witnesses as detailed upon the trial, or contains the essence of such testimony.

9.   While an explanation to the jury of an attorney's relation to the case on trial, or a statement concerning the authority by which he appears, is regarded with disfavor, and should be surpressed, a judgment will not be reversed on that ground, when such statements and explanation are called out by opposing counsel, and it clearly appears that the accused is in no manner prejudiced thereby.

10.   When the individual responsibility of each juror is sufficiently covered by the general charge to enable each member of the jury to understand that, in order to convict the accused, he must be satisfied from the evidence beyond a reasonable doubt, that the accused committed the crime as charged in the indictment, it is not error to refuse to give the following instruction: "If any one of the jury, after having considered all the evidence in the case, and after having consulted with his fellow jurymen, should entertain a reasonable doubt of the defendant's guilt, then the jury cannot find the defendant guilty."

(Syllabus by the Court.   Opinion filed June 13, 1894.)

Error to circuit court, Hanson county.   Hon. D. HANEY, Judge.

Frank B. Phelps was convicted of murder and brings error. Affirmed.

The facts are stated in the opinion.

*Wilford Smith, H. F. Fellows* and *Goodykoontz & Helwig,* for defendant and plaintiff in error.

Evidence of the commission of another offense by defendant cannot be admitted against him upon trial for a crime. Rice Evi. 207; People v. Shoop, 107 N. Y. App. 427; Shaffner v. Comm. 72 Pa. 60; State v. Lapage, 57 N. H. 245.   It is prejudicial error to allow cross-examination of an accused person as to conduct which could serve no purpose except to prejudice him before the jury.   Haywood v. People, 96 Ill. 492; Gifford v. People, 87 Ill. 210; People v. Pinkerton, 79 Mich. 110; Clark v. State, 78 Ala. 474; People v. Browne, 72 N. Y,

571; Id. v. Crapo, 76 Id. 288; State v. Carson, 66 Maine 116; Barley v. State, 69 Miss. 333; People v. Hamilton, 68 Cal. 101. If any of the jury, after having considered all the evidence and after having consulted with his fellow jurymen should entertain a reasonable doubt of the defendant's guilt, they cannot convict. State v. Wytt, 8 Pac. 173; Castle v. State, 75 Ind. 146; N. S. V. Dorsey, 3 Star Route Gov. Ed. 3188.

A defendant cannot be convicted upon the testimony of an accomplice unless it be corroborated by such other evidence as tends to connect the defendant with the commission of the offense. Comp. Laws, § 7384; Comm. v. Bosworth, 22 Pick. 399; Id. v. Holmes, 127 Mass. 424; State v. Money, 54 Conn. 178; Id. v. Lawler, 28 Minn. 216; People v. Ames, 39 Cal. 403; Id. v. Kunz, 73 Cal. 313; Id. v. Plath, 3 N. E. 790; Id. v. Ogle, 104 N. Y. 511; Id. v. Jachue, 103 N. Y. 591; Id. v. Eckert, 16 Cal. 110; Goft v. State, 3 Has. 450.

It is prejudicial error for counsel to argue and discuss in the closing argument to the jury, questions outside of the record in the case. 9 Am. & E. Enc. Law, 739; Henry v. Railroad, 30 N. W. 630; People v. Quick, 25 N. W. 302; People v. Bowers, 21 Pac. 752; State v. Olds, 24 Pac. 394; Brown v. Swineford, 44 Wis. 281.

*Coe I. Crawford, Attorney General,* and *James Brown,* for defendant in error.

The law does not require the full name of a witness to be written on the back of an indictment, if there is sufficient written to identify the party. State v. McComb, 18 Ia. 43; Id. v. Ostrander, Id. 435; Fauts v. State, 4 G. Gr. 500; State v. Schloyet 19 Ia. 169; Id. v. Stanley, 33 Ia. 526; Id. v. Briggs, 68 Ia. 416; Id. v. Blackman, 5 Pac. 173.

Under a constitutional provision requiring the incumbent of an office to be a male citizen, a woman may be the deputy of such incumbent. Jeffries v. Harrington, 17 Pac. 505; Wilson v. Circuit, 49 N. W. 869; Sess. Laws 1891, Chap. 108; Warwick v. State, 25 O. St. 24.

A defendant who takes the stand in his own behalf may be cross-examined to the same extent as other witnesses. Wharton Co. Ev. 9 Ed. § 430; 4 A. & E. Enc. Law, 870; People v. Hite, 33 Pac. 254; Id. v. McCormick, 32 N. E. 26.

A general instruction to the jury in a criminal case, that they should acquit if on the whole case they have a reasonable doubt, sufficiently directs them that each material fact must be established beyond such doubt. State v. Stewart, 3 N. W. 99; Id. v. Hamilton, 57 Ia. 596; Thompson in Cr. L. May 45; State v. Rovabacker, 19; Ia. 154; Spies v. People, 6 Am. Cr. 572; N. S. v. Harper, 33 Fed. 481; Boydecton v. Gittuer, 3 Or. 118.

FULLER, J. At the regular July, 1893, term of circuit court for Lyman county, plaintiff in error was indicted for the crime of murder. Among the names indorsed on the back of the indictment as witnesses, sworn and examined before the grand jury, was Dr. Felker. During the session of the gand jury at which the indictment was found, and for the purpose of examining witnesses and performing the duties of state's attorney, George H. King, an attorney at law, 21 years of age, and duly appointed deputy state's attorney of Lyman county, was present in the grand jury room. A motion to quash the indictment was duly made, upon the ground that the name of Moses C. Felker, one of the witnesses examined before the grand jury, was not inserted at the foot of the indictment or indorsed thereon, and for the reason that George H. King was not qualified to act as deputy state's attorney, for the reason that he was not at least 25 years of age and did not possess all the statutory qualifications for a state's attorney. Upon the hearing of the motion to quash the indictment, counsel for plaintiff in error called Moses C. Felker, who testified that he was a resident of Lyman county, S. D.; that he was called and examined as a witness before the grand jury, in the matter of the state against Frank B. Phelps, charged with the murder

·of Mot Matson; that he had been known by the name of Dr. Felker or Doc. Felker ever since he had been in the county, and ever since he had studied medicine, and for the last 10 years; and that he was usually· addressed by that name. The motion was denied, and the ruling of the court thereon is assigned as error  The evident intention of the legislature in requiring the names of the witnesses who testified before the grand jury to be inserted at the foot of the indictment or indorsed thereon before it is presented to the court was to apprise the defendant that such witnesses would be called upon the trial of the cause, and in this case it unmistakably appears that defendant and his counsel clearly understood who was designated by the name Dr. Felker; and in the absence of any claim that defendant was misled or prejudiced, we are disposed to hold that the statute was in that regard substantially complied with.   State v. McComb, 18 Iowa, 43; State v. Blockmam (Kan.) 5 Pac. 173; State v. Briggs, 68 Iowa, 416, 27 N. W. 358.

George H. King was the only attorney who appeared before the grand jury.  His appointment as deputy state's attorney was in writing, signed by Luke Hayes, the state's attorney of Lyman county, and filed in the office of the clerk of the circuit court.  Section 24 of article 5 of our constitution requires, among other qualifications, that a state's attorney must be at least 25 years of age, and, in the light most favorable to counsel's contention, it must be conceded that George H. King was the *de facto* deputy state's attorney at the time he appeared before the grand jury;·and, so far as the rights of the state and the people are concerned, his acts, in that event, would be as valid and binding as though he had been an officer *de jure*, and the validity of such acts could not be questioned · collaterally in proceedings to which he was not a party.   State v. Carroll, 38 Conn. 449; Mechem, Pub. Off. 328-330, and cases there cited.   Section 1 of chapter 108 of the Laws of 1891 provides that a state's atttorney may appoint a deputy·who shall

be an attorney of record, and that such deputy shall be vested with all the powers of such state's attorney. There is nothing in the statute requiring a deputy state's attorney to be over the age of 25 years, and there is nothing in the constitutional provision indicating an intention on the part of the framers thereof to prohibit an attorney at law possessing all the other attainments and qualifications of a state's attorney from acting as a deputy when appointed in the manner provided by statute. Jeffries v. Harrington (Colo. Sup.) 17 Pac. 505; Wilson v. Circuit Judge (Mich,) 49 N. W. 869; Warwick v. State, 25 Ohio St. 24.

After the motion to quash the indictment was overruled, defendant entered a plea of not guilty, and applied for a change of venue, which was granted; and the case was tried at the November, 1893, term of the Hanson county circuit court. That plaintiff in error procured the witness Henry Shroeder to effect the death of one Mot Matson was the theory upon which the cause was prosecuted to a verdict of guilty as charged in the indictment. Our statute abrogates all distinctions between an accessory before the fact and a principal; and one who is concerned in the commission of a felony, whether he directly commits the act constituting the offense, or aids and abets in its commission, though not present, must be indicted, tried, and punished as a principal. Comp. Laws, §§ 6226, 7260. It appears from the evidence that the defendant Phelps was the owner of land situated on an island in the Missouri river, where he resided with his family during the winter of 1892-93, up to and including a portion of the month of April of that year, when he removed with his family to Chamberlain, leaving the witness Shroeder, who had been in his employ for several months, upon the island where he continued his labors in chopping and hauling wood for the defendant, up to the time of the commission of the offense for which the defendant Phelps was indicted. The Matson family, two brothers, Mot and Olin, and their sister Christina, resided just across the slough from and near

by the Phelps place at and prior to the time Shroeder shot and immediately killed the deceased, Mot Matson, as testified to by said Shroeder.    Evidently for the purpose of indicating a motive, and for the purpose of connecting the defendant with the commission of the offense, a number of witnesses were allowed to testify quite fully, and over objection of defendant's counsel, regarding numerous threats that Phelps had made concerning the Matson family, and of the fact that Christina Matson had procured defendant's arrest, and caused him to be held to answer the action of a grand jury at the ensuing term of the circuit court upon a charge of the larceny of a cow of which she was the owner; and the action of the court in admitting this evidence is assigned as error.    From a careful and cautious examination of all the evidence relating to the alleged threats and the charge of larceny, and from a consideration of the same in its relation to the charge upon which the defendant was being tried, we are convinced that such evidence was competent, as it tended to establish the motive, intent, and guilty knowledge of the defendant, which was relevant, pertinent, and material to the main point in issue, viz: the guilt or innocence of the defendant; and, under all the circumstances, it appears to be the best evidence upon such points of which the case in its nature is susceptible.    Evidence directly tending to establish the guilt of a person charged with a felony is not incompetent, for the sole reason that it tends to prove the commission of another offense, when it goes to the question of motive, or appears to be a part of a plan or scheme through which the accused procured a crime to be committed, and for which he is being tried as a principal.    Com. v. Tuckerman, 10 Gray, 197; State v. Lapage, 57 N. H. 245; Com. v. Stearns, 10 Metc. (Mass.) 256; Pontius v. People, 82 N. Y. 339; Com. v. Choate, 105; Mass. 451; Pierson v. People, 79, N. Y. 424; 3 Russ. Crimes, 280-296, inclusive, and cases cited; 3 Rice, Cr. Ev. 216, 217, and cases there cited.

The witness Henry Shroeder, who testified that he fired the fatal shot, was permitted to testify fully concerning his rela-

tions with the accused, and to detail all conversations between himself and the defendant relating to the Matsons, including statements by the defendant that he had shot and killed persons on different occasions, giving particulars as to time, place and circumstances, and that no effort was made to prosecute him therefor, and that, if he (Shroeder) would kill the Matsons, no one would suspicion him, and that nothing would be done about it. He further testified that, about the time the defendant was attempting to induce him by the promise of reward, and by the force of threats, to kill the Matsons, he also advised him to steal for his own use a span of horses, from a herd that was running at large in the neighborhood, and to bring them onto the island; and the defendant assured him that the horses would never be discovered, and that everything would be all right. We think this evidence was competent to show the successive steps taken by the defendant to place the witness in an attitude that would seal his lips,—put him under the influence and control of the defendant, and thus enable him, through the agency of the witness, to carry out the scheme which resulted in the murder for which the defendant was placed upon his trial. An objection was made to the examination of Shroeder as a witness, on the ground that he was an accomplice, and for that reason disqualified to testify against the defendant. No rule of law or evidence is better established, than the one which admits the evidende of an accomplice, otherwise competent, for what it is worth to the jury, when considered in the light of proper cautionary instructions from the court as to the necessity of corroboration, and as to matters which tend to induce such witness to testify falsely. Our lawmakers have adopted this almost universal rule of the common law, and have wisely restricted its force and effect, by declaring that "a conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of

the offense, or the circumstances thereof." Comp. Laws § 7384.

The witness Shroeder, after testifying specifically concerning the persistent efforts of the defendant to induce him to commit the crime, by offering to give him a part of the island, a span of horses, harness, and wagon if he would kill the Matsons, and of the numerous assurances that no one would suspicion the witness if he would take defendant's gun, and go right over to the house, and "clean out the whole shooting match," testified that the defendant used the following language: "You want to nail them,—nail them. There aint going to be anything done to you. I am the man they will jump." Then "we can run things just to suit ourselves. We can run the Indian cattle here, the calves that they aint branded, and who in hell will know it? * * * I was afraid of Frank Phelps. I thought, if I didn't do it, he would kill me. Then Saturday evening I went over there. It was probably about nine o'clock. That night I went into the yard to the west window, and raised the rifle five times. Mot Matson was sitting in the door, and George was sitting on the south side of the house, inside. I did not see Christina that night. And the fifth time I raised the gun I fired and, at the same time I fired, I heard a loud scream in the house; and what I done after I fired the shot I don't know, until I recognized or realized where I was on the island, at the south end of Frank Phelps' log house. I had hold of the barrel of the rifle. It was Frank Phelps' rifle. I got it of Frank Phelps, the defendant in this trial. Frank Phelps gave me this rifle, and said: 'This is the thing that will do them.' Frank Phelps and I went out on the island one day about twenty rods south of the house, and he told me—He had the gun in his hand, and he says: 'This is the thing that will do them.'" To attempt to quote all or any considerable part of the testimony of this witness, which is at great length, would needlessly extend this opinion beyond reasonable limits, and we will dismiss the

subject with the observation that the numerous objections of learned counsel to the various questions put to this witness were properly overruled by the court, and the evidence was submitted to the jury, under suitable instructions as to the manner of weighing and determining the value of the same.

While the character of a person accused of a crime in a court of justice is attacked by the charge against him, it is not competent for the state to offer evidence for the sole puɪpose of proving his bad character, unless the defendant has first introduced testimony for the purpose of proving that his character was good; and, as counsel for the defendant contend that evidence of that nature was improperly introduced on the part of the state, we will examine the record before us with a view to a determination of that question. Sheriff Morgan was called as a witness on the part of the state, and testified as follows: "Q. You may state what the defendant said when you arrested him? (Objected to as incompetent.)" Counsel for the prosecution stated that it was to show his habitual use of profanity, and the objection was overruled. "A. He says: 'G——d——it. I don't know what they want to arrest me for. I was in Chamberlain.' I told him what Miss Matson said, and he still protested his innocence in the same way, at different times, right along in the same language. I don't know that he looked any different from what he did any other time." Statements made by a person accused of a crime, together with his demeanor at the time of being placed under arrest, are always open to inquiry when not made under duress, or induced by meance or promises of immunity; and the statement of counsel that he desired to introduce such evidence for an immaterial and an objectional purpose would not alone render the same inadmissible or prejudice the rights of the defendant. People v. Wentz, 37 N. Y. 303; People v. Long, 43 Cal. 444; Com. v. Crocker, 108 Mass. 464; People v. Montgomery, 13 Abb. Pr. (N. S.) 209; 3 Rice, Cr. Ev. 318.

The defendant testified, in response to a question propounded by his own counsel, that he stated at the time he

heard of the murder that "it was a hell of a note about Henry killing Mot Matson, and that it would not have been half so bad if he had killed Christina." On cross-examination, counsel for the state asked the following question. "Is it not true that you were a little disappointed in Henry killing Mot instead of the sister?" An objection to the question, on the ground that it was an insult to the witness, was overruled and the defendant answered: "No, sir; I was not disappointed." Under the circumstances of the case, we regard the question within the scope of a proper cross-examination; and counsel's contention that it was reversible error to permit the question to be asked, and require the defendant to answer it, should not be entertained. From a careful examination of the record, we are convinced that no reversible error can be found in the rulings of the court on questions propounded to the defendant on cross-examination. We have no statutory limitation as to the extent to which an accused person, testifying in his own behalf, can be cross-examined; and the rule which applies to other witnesses in that regard applies to him. Connors v. People, 50 N. Y. 240; Boyle v. State, 105, Ind. 469, 5 N. E. 203; People v. Howard, 73 Mich. 10, 40 N. W. 789; Com. v. Tolliver, 119 Mass. 312; State v. Pfefferle, 36 Kan. 90, 12 Pac. 406; State v. Huff. 11 Nev. 17; McKeone v. People, 6 Col. 346.

A defendant who does not claim his privilege, but, at his own instance and in his own behalf, takes the witness stand, and testifies without reservation upon all the issues involved, may, within the discretion of the court, be interrogated on cross-examination concerning matters which tend to impugn his moral character or lay the foundation for impeachment. In Territory v. O'Hare, 1 N. D. 31, 44 N. W. 1003, which was a trial on an indictment for murder, Justice Wallen, speaking for the court says: "Defendant voluntarily took the stand as a witness in his own behalf, and testified at large upon the issues. Upon cross-examination he was required to testify to his antecedents, and, in doing so, stated that he had passed

under the name of Sullivan at Fargo, and had been in jail at Fargo, and at Stillwater, Minn. This testimony was objected to by defendant's counsel as irrelevant, and not proper cross examination. The objection was overruled, and the ruling was assigned as error, * * * We hold the right of cross-examination as to outside matters of fact, which effect the general character of the witness, and tend to disgrace him and affect his credibility, is within the limits of a sound judicial discretion and a salutary rule. We find no abuse of judicial discretion in this matter." A person accused of a crime, who testifies in his own behalf, may be, in the discretion of the court, subjected to a cross-examination on the whole case including facts which tend to impeach his moral character or affect his creditibility as a witness, or for the purpose of laying the foundation for impeachment. Shepard v. Parker, 36 N. Y. 517; People v. Clark, 102 N. Y. 735, 8 N. E. 38; State v. Red, 53 Ia. 69, 4 N. W. 831; Norris v. State, 87 Ala. 85, 6 South. 371; U. S. v. Wood (Dak.) 33 N. W. 59; People v. Hite (Utah) 33 Pac. 254; Rice, Cr. Ev. 344–352, including copious notes and citations.

Dr. Duncan, who conducted the post mortem examination over the body of the deceased, after testifying at length on the part of the defense as to the condition and extent of the wounds and after describing a certain gunshot wound, and a fracture of the skull and upper jawbone, was interrogated by defendant's counsel as follows: "Q. In your opinion, how was the depression on the left side of the head made? A. I can account for it in no other way than it was done by a blow on the head. I should presume it was a blunt instrument. My opinion is that the wound was caused by a blow from some blunt instrument; as I have said a while ago, in my opinion, that the fracture on the lower jaw was made by some blunt instrument." He further testified that he observed blood on the grass and ground, and saw an ax and monkey wrench near by; that the lips of the wrench were screwed up close together, and

he saw a hair and some blood on the wrench, but none on the ax. "Q. Could the fractures which you have described be made by a monkey wrench which you saw? A. I believe they could. Q. In your opinion, could the fractures upon the skull have been caused by a gunshot wound? A. In my opinion, no. ·Q. Could the fracture, in your opinion, have been made upon the lower jaw, which you have described, by a gunshot wound? A. In my opinion, it could not. In my opinion, the gunshot wound in the face was not fatal. In my opinion, the injuries upon the skull would produce death. Q. What, in your opinion was the cause of the death of the deceased?" The state objected to the question as incompetent in form, and the objection was sustained, and the ruling of the court is assigned as error. The above question was followed by a properly framed hypothetical question, designed to elicit from the witness an opinion as to the cause of Mot Matson's death, in response to which the witness testified that, in his opinion, the death was caused by the fracture of the skull. We therefore conclude that, if the court erred in its rulings upon questions propounded to this witness for the purpose of getting an opinion as to what caused the death of Mot Matson, such error is not available, and is without prejudice, for the reason that the witness was finally permitted to answer the question as fully as he desired, and all his evidence bearing upon that subject went to the jury for consideration.

While we have not deemed it essential to take up in regular order, and discuss specifically, the very numerous assignments of error prepared and submitted by learned counsel, relating to the admission and rejection of evidence upon the trial, we have given to each question merited consideration, and are convinced from a careful examination of the record before us that there is no reversible error in the rulings of the court upon the admission or rejection of evidence; and, in our opinion, the malice of the defendant towards the Matsons, and his motive for desiring to dispose of the entire family, together

with the numerous threats and declarations  that he would kill
them all, as shown  by the evidence of numerous and seeming-
ly dispassionate witnesses, sufficiently corroborates the evi-
dence of his accomplice, Shroeder, to connect the defendant
with the commission of the defense, and justify the jury in
finding him guilty as charged in the indictment.

The thirty-third assignment of error is as follows: "The
court erred in permitting counsel for the prosecution, in the
closing argument to the jury, over the objection of the defend-
ant, to argue and discuss questions outside the record in the
case." It appears from the record that one of the attorneys
for defendant, in making his argument to the jury, asked
in a criticising manner a number of questions concerning the
authority by which some of the counsel for the prosecution
appeared in the case, and these questions seem to be directed
to such counsel, one of whom, in closing the case to the jury,
explained the relation of himself and his associates to the pros-
ecution, and briefly discussed the subject with a portion of the
evidence of one of the witnesses. Counsel for defendant ob-
jected to the argument and statements that were being made,
on the ground that the same were entirely outside the record,
and. the court made the following statement: "I understand
counsel asked Mr. Argo to explain his connection in this case.
In the opinion of the court, the counsel has fairly stated the
evidence before the jury. If he has not stated it, gentlemen
(addressing the jury), you should know what the evidence is,
and will not give weight to any statement that does not fairly
present the evidence, and you will treat the argument, being
careful not to accept as evidence anything but what is evidence,
and you believe it from what you have heard." Where a dis-
pute arises between counsel as to the exact testimony of a wit-
ness, and the matter is brought to the attention of the court by
a timely objetion, the presiding judge may settle it from his
memory or the reporter's notes; or he may, as was done in this
case, submit the matter to the recollection of the jury, with the

injunction that they do not consider the argument of counsel as to facts in issue, unless it recites the statements of witnesses as detailed upon the trial, or contains the essence of such testimony. Although counsel's explanation of his relations to the prosecution was in no manner instructive or essential to a proper determination of the issues before the court and the jury a plausible excuse therefor exists in the fact that it was called out by one of the counsel for defendant; and, as the substantial rights of the accused were not thereby prejudiced, the judgment will not be reversed upon that ground. Shular v. State (Ind.) 4 N. E. 870; People v. Lee Ah Yute, 60 Cal. 95; Atkins v. State, 11 Tex. App. 8; Baysinger v. People (Ill.) 5 N. E. 375; Wilson v. People, 94 Ill. 299; Greene v. State, 17 Tex. App. 395.

Counsel for defendant requested the court to charge the jury that "if any one of the jury, after having considered all the evidence in this case, and after having consulted with his fellow jurymen, should entertain a reasonable doubt of the defendant's guilt, then the jury cannot find the defendant guilty." The refusal of the court to give this instruction is assigned as error, and, as the courts of Indiana and Kansas have looked with favor upon an instruction substantially similar, we will see from an examination of the court's charge to the jury whether the individual responsibility of each juror was sufficiently covered by such instructions, as to enable each member of the jury to know that, in order to convict the accused, he must be satisfied from the evidence, beyond a reasonable doubt, that the defendant committed the crime as charged in the indictment. As no other objection is made to the numerous and well considered instructions of the learned court, the entire charge will not appear in this opinion. After correctly defining and fully explaining a "reasonable doubt," and in addressing the jury generally, the court used the following expression: "If you, gentlemen, should be satisfied beyond a reasonable doubt," etc. In speaking of the condition of the

mind essential to a conviction, the court used, without italicizing any of the words; the following language: "It is that state of the case which, after the comparison and consideration of all the evidence, leaves the mind of the juror in such condition that he can say that he feels an abiding conviction, to a moral certainty, of the truth of the charge." Upon the return of the verdict, the jury was polled in the usual manner, by calling the name of each individual of which the jury was composed, and by reading the verdict to him as recorded, and by asking him if it was his verdict. In response to this question, each juror, in person and for himself, answered that it was. It is fair to presume that each juror possessed ordinary intelligence, and we are of the opinion that the court's charge, taken and viewed as an entirety, was abundantly sufficient to enable each juror to fully understand his relation to the case and to his fellow jurors, and to realize the individual responsibility resting upon him as a member of that jury, which, considered with the further fact that the jury was polled, convinces us that no juror consented to the verdict until his own mind was convinced of the defendant's guilt beyond a reasonable doubt.

From a consideration of all the objections raised by learned counsel, and from an examination of the entire record before us, we are convinced that the defendant's trial has been fair and impartial, and that no prejudicial error can be found in the record. The conviction should be sustained, and the judgment is affirmed.