No. 21,265.

THE STATE OF KANSAS, *Appellee*, V. WILLIAM HANKS,
*Appellant*.

### SYLLABUS BY THE COURT.

1. ARSON IN THIRD DEGREE—*Sufficient Information.* In a prosecution
for arson in the third degree an information is not fatally defective
because it fails to allege that the property was at the time insured
against loss or damage by fire.

2. SAME—*Motion to Quash Information—Properly Denied.* In a prose-
cution under section 57 of the crimes act (Gen. Stat. 1915, § 3425)
for arson in the third degree the information charged that defendant
burned certain personal property which was insured in The Sun In-
surance Office, with the intent to defraud the insurer. A motion to
quash the information on the ground that it did not allege that the
property was insured against loss by fire is held to have been properly
overruled.

3. SAME—*Charge of Conspiracy—Sustained by Evidence.* The evidence
examined, and held sufficient to sustain the charge of conspiracy to
burn and the burning of the property charged in the information.

4. SAME—*Motion for New Trial—Properly Denied.* For reasons stated
in the opinion the action of the trial court in denying the motion for
a new trial is approved.

Appeal from Saline district court; DALLAS GROVER, judge.
Opinion filed June 9, 1917. Affirmed.

*G. A. Spencer,* and *A. R. Buzick, jr.,* both of Salina, for the
appellant.

*S. M. Brewster,* attorney-general, *W. B. Crowther,* county
attorney, *L. W. Hamner, C. W. Burch, B. I. Litowich,* and
*La Rue Royce,* all of Salina, for the appellee.

The opinion of the court was delivered by

PORTER, J.: William Hanks and Robert Kelly were jointly
charged with a conspiracy to burn and with having burned the
furniture in Kelly's house, which was insured in The Sun In-
surance Office, with the intent to defraud the insurer. Hanks
demanded and was given a separate trial, and was tried and
convicted of arson in the third degree. Kelly had made an
oral and written confession as to the facts of the conspiracy,

and was a witness for the state. After the conviction of Hanks the charge against Kelly was dismissed.

On the hearing of the motion for a new trial Kelly repudiated his confession, and attempted to exonerate Hanks. He was immediately arrested and placed in jail on a charge of perjury, and the hearing was postponed several days. Later he testified, again reiterating his confession, and said that his repudiation had been procured at the suggestion of Hanks; that his brother had also told him that the attorneys for Hanks had said that the charge against him having been dismissed there was no reason why he might not testify in favor of Hanks. The court overruled the motion for a new trial, and Hanks appeals.

There was a motion to quash because the information did not allege that the insurance on the furniture was against loss by fire, and it is insisted that the information was fatally defective in this respect, because the insurance might have been against loss by tornado or lightning, or some hazard other than fire. The information was drawn under section 57 of the crimes act (Gen. Stat. 1915, § 3425), which defines arson in the third degree as the burning of "any building, boat or vessel, or any goods, wares, or merchandise, or other chattels, which shall at the time be insured against loss or damage by fire, with intent to defraud or prejudice the insurer," etc. The defendant cites in support of his contention the following statement from 5 Corpus Juris, 567:

"So it must be alleged that the property burned was at the time insured against loss or damage by fire."

We have carefully examined nearly every case cited in the note. The majority of them do not support the text, although a few of them do. In many of the cases the indictment expressly charged that the property was insured against loss by fire, and in several of the cases the question is not mentioned. This court has already taken the contrary view in The State v. Jessup, 42 Kan. 422, 22 Pac. 627, where an indictment worded substantially as the one in the present case was held sufficient as against a motion in arrest of judgment. The defendant seeks to draw a distinction between the two cases because there was no motion to quash the information

in the Jessup case. In the opinion, however, independently of the manner in which the question was raised, it was said:

"We think that the averments of the information as made, were in legal effect equivalent to a charge that the barn, at the time of its destruction, was insured against loss or damage by fire. It is a principle of pleading that whatever is included in, or necessarily implied from, an express allegation, need not be otherwise averred. (*Baysinger v. The People*, 115 Ill. 419.) The defendant, the court and the jury all well understood from the information the offense with which the defendant was charged; this is too clear to admit of serious doubt." (p. 424.)

In *Hart v. State,* 181 Ind. 23, the indictment alleged that the property was insured in a policy which had been issued by the Connecticut Fire Insurance Company of Hartford, Conn. The statute contained the same requirement as ours. The motion to quash was based solely upon the absence of a direct averment that the insurance was against loss or damage by fire. The court held the indictment sufficient "since the name of the company standing alone, would warrant the inference that the insurance was against fire loss, and the further allegation that the property was fired to defraud that company compels such inference." (Syl. ¶ 4.) It was said in the opinion that it was necessary to allege that it was insurance against loss or damage by fire, but that the Indiana code of criminal procedure "requires no greater degree of certainty in criminal pleadings· than is required in civil ones," and that "certainty, to a common intent, at least under the code system, is attained when the pleading shall be deemed to allege all that can be implied from the direct allegations therein, by a reasonable and fair intendment." (p. 25.)

In the case at bar the name of the insurance company mentioned in the information does not contain the words "fire insurance," but it seems absurd to contend that the defendant was not fully informed of the exact nature of the charge against him. The insurance must necessarily have covered the kind of loss naturally resulting from the act of setting fire to the property. If the insurance had been against some kind of loss other than by fire, burning the property could not have defrauded the insurer, and the purpose of the conspiracy is alleged to have been to defraud the insurance company. We regard the point, however, as too technical to invite serious consideration, except for the fact that the numerical weight of authority appears to be in favor of defendant's contention.

The conflict of authority can only be explained by the different attitude courts take as to the relative importance of purely technical omissions and defects in criminal procedure.   In this state technical objections which do not affect the substantial rights of the defendant are disregarded.  (Crim. Code, § 293, Gen. Stat. 1915, § 8215; *The State v. King,* ante, p. 189.)

It is seriously insisted that "there is not one word of evidence in this record which even remotely tends to show the existence of a conspiracy between this appellant and Robert Kelly," and it is further said that the defendant was convicted solely upon the testimony of a confessed perjurer.   Quite naturally the defendant did not testify directly to the conspiracy, but there was circumstantial evidence to prove it in addition to the confession of Kelly.   The furniture burned was in a house rented by Robert Kelly and occupied by himself and family.   He held a policy of fire insurance to the amount of $300 on the furniture.   Guthrie, brother-in-law of Kelly, lived about two blocks distant.   Hanks is a cousin of Guthrie. The evidence was that defendant took an empty five-gallon oil can from Guthrie's to Kelly's house on the 20th of September. Later in the day he took the same oil can to a grocery store near by, where he purchased and paid for five gallons of coal oil, and ordered it delivered at the Kelly home.   He returned to the Kelly home and ate his noon meal and his supper there. The oil was delivered about five o'clock in the afternoon and placed on an outside back porch.   After supper the Guthrie family, the Kelly family and Hanks left the Kelly house together and walked to the post office.   The Guthries and the Kellys went to an air-dome show, leaving the defendant near the post office at about eight o'clock.   The fire was discovered at 10:20 p. m.   The fire chief found that coal oil had been thrown upon the bed and furniture in one room, where the furniture was practically consumed, and the bedding in another room was saturated with oil and partly burned.   There was no connection between the two rooms.   A hole had been broken in the wall between the kitchen and another room and a broom saturated with coal oil had been placed in the hole.   The house was closed and the fire had apparently burned very slowly. The five-gallon can was found to be half full of oil, and a two-gallon can used by the Kelly family stood in the kitchen half

full.  Hanks attempted to prove an alibi and had a number of witnesses testify that he went to bed that night very early. He had a room at another place.

After Kelly confessed to the officers he was taken into the presence of Hanks, where he accused Hanks of burning the property and of persuading him to allow it to be done.  He accused Hanks of having told him after the fire that he had burned it and how he burned it.  The officers asked the defendant if these statements were true but he refused to answer. He was asked a number of times whether he would say that Kelly was lying, and said: "No, he would n't say that he was." He was certainly very considerate of Kelly's feelings.  His attitude was the same as if he had remarked, "I would not go so far as to say that my friend here has made a false statement; possibly he may be laboring under a misapprehension of the facts."  There was abundant circumstantial evidence to sustain the charge of the conspiracy and of the offense of arson. Our views of the ruling denying a new trial are well expressed by the following observations made by the trial court in passing upon the motion:

"The motion for a new trial contains all the statutory grounds, but the only one seriously urged in this hearing is that of newly discovered evidence.  The defendant relies upon *The State v. Keheler*, 74 Kan. 631. I am familiar with the facts in that case and I do not think I misapprehend the law as stated in that decision.  Neither do I fail to recognize the wisdom and justice of that decision.  But the case at bar is easily distinguished from the Keheler case.

"Immediately after the conviction of Hanks and the dismissal of Kelly, Hanks began to importune Kelly to repudiate the statement made by him to the county attorney.  It will be noted that he did not say to Kelly: 'Kelly, you have done me a great wrong.  The statement you made to the county attorney is false, and you know it is false.  That statement helped to convict me, and I want you to right that wrong.  I want you to be a witness for me at the hearing of my motion for a new trial, and I ask you to say to the court that I am innocent, that I had nothing to do with the transaction.'  What he did say to Kelly was: 'Now, Kelly, you are out of danger.  The case against you has been dismissed.  No one can trouble you any more.  I want you to repudiate your statement to the county attorney and swear that I had nothing to do with setting fire to the furniture.'  And it appears that it had required several weeks of persuasion to get Kelly to repudiate that statement and to testify at this hearing as he has testified.

"The defendant has had a fair trial.  The verdict of the jury is a

righteous verdict and the court can without hesitation approve it. Having observed what occurred at the trial of this case, including the demeanor of the witnesses, as well as all the proceedings in this hearing and having no doubt whatever of the defendant's guilt, I feel that to grant a new trial simply because Kelly has been induced to repudiate a confession that I firmly believe was true, would be to make of this case a ridiculous farce."

The judgment is affirmed.