## STATE v. COLEMAN.

1. On trial of an indictment, the jury, under proper instructions, are the sole judges of the weight of the evidence.

2. Where defendant, while in jail, handed a letter to one of his guards, with directions to deliver it to the addressee, and the defendant's brother and sister testified that it was in defendant's handwriting, its genuineness was sufficiently proven to admit it in evidence for purpose of comparison of handwriting.

3. Where defendant's attorney, in cross-examining a witness, stated that a certain exhibit was the proved and admitted signature of the defendant and asked witness whether the same hand that signed it signed a certain paper in question, defendant could not rely on the objection that the exhibit was erroneously admitted because not proven genuine.

4. On trial of indictment charging defendant with killing his brother, the motive alleged was a desire to procure insurance money. Deceased had taken out a life insurance policy for $5,000, of which defendant was named as beneficiary in a will alleged to have been executed by deceased. Defendant had taken out a similar policy, and executed a will therefor in his brother's favor. Held, that a letter written by defendant, while in jail, to the state's attorney asking him to send defendant his grip, which was found to contain the insurance policies and wills, was properly admitted in evidence.

5. Medical examination sheets and certificates and applications for insurance, some purporting to be signed by deceased and some signed by defendant, were properly admitted under the state's theory that defendant applied for insurance and executed the will in favor of his brother to induce him to do the same for defendant.

6. On trial of an indictment charging defendant with killing his brother, in which the motive alleged was to secure the benefits of insurance on the life of the deceased, applications for further insurance, notes for premiums, and a will naming defendant as beneficiary in an insurance policy, all purporting to be signed by deceased, with evidence tending to show that they were forged by defendant, were not to be rejected because tending to establish another crime.

7. On trial of defendant for killing his brother for the purpose of procuring insurance under policies on his life, a banker testified that defendant had kept funds in his bank, against which defendant and deceased both drew checks. On cross-examination he was asked what transactions took place between him and the two brothers with reference to the fund, and replied "it was funds received from their brother's life insurance." Held, that as the question was proper cross-examination, and no motion was made to strike out the answer as unresponsive, no error appeared.

8. Where, on a prosecution for murder, the state proved contradictory statements made by defendant as to the manner and cause of decedent's death, and the court told the jury they were the sole judges of the facts and the weight to be given the testimony, it had amply protected defendant, and a further instruction cautioning them as to the weight to be given the testimony as to such statements was properly refused.

9. On prosecution for murder, founded entirely on circumstantial evidence, an instruction that "if any one of the jury after having considered all the evidence in this case, and after having consulted with his fellow jurymen, should entertain a reasonable doubt of the defendant's guilt, then the jury cannot find the defendant guilty," was properly refused, especially in view of an instruction that no man as to whose guilt there is a reasonable doubt in the minds of the jury, or of a single juror, should be convicted.

10. On prosecution for murder, an instruction defining circumstantial evidence, and stating that the evidence in the case, though circumstantial, was competent, and if it was of such a character as to exclude every reasonable theory or hypothesis other than that of defendant's guilt, beyond a reasonable doubt, it should be given the same weight as direct evidence of the fact alleged, and that "circumstantial evidence, when competent and when complete and satisfying to your minds, * * * is entitled to the same weight that direct evidence is," was not improper.

11. On prosecution for murder, a remark by the court, in ruling on an objection to the admission of a statement of the defendant at the coroner's inquest, that, "if he told the truth then, it won't hurt him now," was not ground for reversal.

12. Under Code Cr. Proc. § 430, authorizing the trial court to grant a new trial "in the following cases only," including error in the decision of a

question of law, but not designating as a ground the fact that a juror who sat in the case was disqualified, such disqualification was not ground for new trial where no challenge was interposed, or ruling had thereon.

13. Disqualification of a juror does not constitute ground for new trial, within the provision of Code Cr. Proc. § 430. granting a new trial for newly discovered evidence.

14. On prosecution of defendant for killing his brother, in which the motive alleged was a desire to secure life insurance money, it appeared that an application for additional insurance for decedent had been filed, and the state had given evidence that this application was forged by defendant. A witness for defendant testified that deceased had stated that he intended to take out additional insurance, and this was not disputed, nor the witness impeached. Held, that a new trial should not be granted for newly discovered evidence consisting of similar testimony by another witness, as it would add no strength to the defense.

15. The granting of a new trial for newly discovered evidence is largely in the discretion of the court, and its action will not be reviewed, save for manifest abuse.

(Opinion filed February 3, 1904.)

Error to circuit court, Faulk county; Hon. LORING E. GAFFY, Judge.

Joseph P. Coleman was convicted of murder, and brings error. Affirmed.

*A. W. Campbell, L. W. Crofoot* and *J. A. Pickler*, for plaintiff in error.

Before an instrument can be used as a standard of comparison, it must not only be already in evidence in the case, but it must be admitted or proved to be genuine. It must be shown to be the genuine production of the person whose handwriting is in question. Roscoe's Criminal Ev., Sec. 5; State v. Miller, 47 Wis. 530; 1 Greenleaf on Ev., Sec. 578; 1 Thompson on Trials, Sec. 1135; Underhill on Ev., Sec. 429; Williams v. Conger, 125 U. S. 397.

A new trial should be granted although the newly dis-
covered evidence was in some degree cumulative, the applica-
tion being otherwise well founded.   Barker v.  Frinck,  18 Vt.
160;  Hambel v. Williams, 37 Io. 224;  Anderson v. State,  43
Con. 514;  State  v.  Foster,  37 Io. 404;  Wilson v. Seaman,  15
S. D. 103.

The  refusal of  the  trial  court to give the  cautionary in-
struction involving a legal principle in regard to weighing evi-
dence which is elementary, and which by  reason  of  the large
amount  of evidence of such character was made peculiarly ap-
plicable and pertinent, was an error which seriously prejudiced
the legal rights of the defendant.   Allen  v.  Kirk,  47 N.  W.
906;  Murta v. Algona, 40 Ia. 302;  Nash v. Hoxie,  59  Wis. 384;
Drehir  v.  Town  of  Frieling, 22  Wis. 675;  Tozer v. McCann,
97 Mass. 580.

It is the right of the parties to have the jury instructed on
the law  applicable  to the case, clearly and  pointedly, so as to
leave no reasonable ground  for  misapprehension  or  mistake.
11 Ency. of Pleading & Practice,  page 213;  People v. Clayton,
4 Utah 451;  People v. Taylor, 36 Col. 255;  Trask v. People, 104
Ill. 569;  State  v.  Gibbons,  10 Ia.  117;  Cooper v. Mulder, 74
Mich. 374;  Hancock v. Stout, 28 Neb.  301;  Foster v. People, 50
N. Y. 601;  Thomegan v. King, 111 U. S.  549.

It is error for the court to instruct  the  jury  that  circum-
stantial evidence should under certain  circumstances have the
same probative force and  produce  the same  results as  direct
evidence.    Post v. State, 10 Tex. App. 580;  White v. State, 19
Tex. App. 343;  People v. O'Brien, 130 Cal. 1.

Where a juror is totally disqualified the law does  not  rec-
ognize him  as  a juror, and, in legal contemplation,  the  case

is to be treated as if he had never been placed upon the jury. People v. Reese et al., 4 Utah, 2 Pac. Rep. 61; Armendares v. State, 10 Texas App. 44; Lamphier v. State, 70 Ind. 317.

It is only where the moving party knew of the disqualification before the juror was sworn, or was negligent in examining the juror upon his voir dire that the motion for a new trial will be denied. Johr v. People, 26 Mich. 427; Bronson v. People, 32 Mich. 34; People v. Scott, 22 N. W. R. 274; People v. Lange, 23 N. W. R. 217.

If the juror is examined upon his voir dire, and by his answers deceives or misleads the party inquiring, a new trial will generally be granted after verdict upon the discovery of the deception. Hester v. Judge, 48 N. W. R. 152.

Evidence is not admissible which will show, or tend to show, that the accused has committed any crime wholly independent of that offense for which he is on trial.

To this general rule there are a few exceptions which are carefully limited and guarded by the courts. People v. Corbin, 56 N. Y. 363; People v. Sharp, 55 N. Y. 81; People v. Molineux, 61 N. E. R. 296.

*Philo Hall,* Atty. Gen., *Frank Turner,* State's Atty., and *D. H. Latham,* for the State.

Writings proved to the satisfaction of the court to be genuine, can be used for the purpose of comparison. Homer v. Wallis, 11 Mass. 309; Moody v. Rowell, 17 Pick. 490; Demeritt v. Randall, 116 Mass. 331; Commonwealth v. Andrews, 143 Mass. 23; Bank of Lancaster v. Whitefall, 10 S. and R. 110; Baker v. Haines, 6 Whart. 284; Travis v. Brown, 43 Pa. St. 9; Haycock v. Greup, 57 Pa. St. 438; Clayton v. Siebert, 3 Brews. 176; State v. Hastings, 53 N. H. 452; Myers v. Toscan,

3 N. H. 48; Adams v. Field, 21 Vt. 256; State v. Ward, 39 Vt. 225; Gifford v. Ford, 5 Vt. 532; Bragg v. Colwell, 19 Ohio St. 413; Pavey v. Pavey, 30 Ohio St. 600; Calkins v. State, 15 Ohio St. 222; Koon v. State, 36 Ohio St. 159; Lyon v. Lyman. 9 Conn. 61; Lyler v. Todd, 36 Conn. 218; State v. Thompson, 80 Me. 194; Woodman v. Dana, 52 Me. 9; Holmberg v. Johnson, 45 Kan. 197; Ort v. Fowler, 31 Kan. 478; Tucker v. Kellogg, 8 Utah 11; Hanroit v. Sherwood, 82 Va. 1; Moore v. Palmer, 14 Wash. 134; Wilson v. Beauchamp, 50 Miss. 24.

The granting or refusing of a new trial upon the ground of newly discovered evidence is largely in the discretion of the trial court, and unless there has been a manifest abuse of such discretion, this court will not review the action of the trial court upon such motion. Wilson v. Seaman, supra; Gaines v. White, 1 S. D. 434; Heyrock v. McKenzie, 8 N. D. 601, 80 N. W. 762; Braithwaite v. Aikin et al., 2 N. D. 57, 49 N. W. 419; State v. Williams, 38 La. Ann. 361; State v. Johnson, 30 La. Ann. 305; United States v. Biena, 42 Pacific 70.

Cumulative evidence will not be sufficient to obtain a new trial unless it is decisive of the case and conclusively leads to a changed result. Peterfish v. Watkins, 124 Ill. 384.

Applications for a new trial upon this ground are looked upon with distrust and disfavor. Heyrock v. McKenzie, supra; Nelson v. Carlson, 54 Minn. 91, 55 N. W. 821; Julie v. Cardinal, 35 Wis. 118-125.

Circumstantial evidence is legal and competent in criminal cases, and if it is of such a character as to exclude every reasonable hypothesis, other than that the defendant is guilty, it is entitled to the same weight as direct testimony. Schoolcraft v. People, 117 Ill. 277; U. S. v. Reder, 60 Fed. 965; Com-

monwealth v. Webster, 5 Cush. 295; People v. Anthony, 56 Cal. 397.

Disqualification of a juror does not constitute ground for new trial within the provision of Code Cr. Proc. Sec. 430, granting a new trial for newly discovered evidence. People v. Fair, 43 Cal. 137; People v. O'Brien, 88 Cal. 483; McMahon v. State, 17 Tex. App. 321; Fisher v. Yoder, 53 Fed. 565; State v. Mandoil, 12 Fla. 151; Costly v. State, 19 Ga. 614; Meeks v. State, 57 Ga. 329.

Where the facts constituting the motive for the crime charged also constitute a separate and distinct crime, evidence of those facts is admissible. Moore v. United States, 150 U. S. 57; Walker v. State, 63 Ala. 105; Dunn v. State, 2 Ark. 229, 35 Am. Dec. 54; Sage v. State, 127 Ind. 15; State v. Kline, 54 Ia. 183; Roberts v. Commonwealth, 8 S. W. 270; State v. Fontenot, 48 La. Ann. 305; Pontius v. People, 82 N. Y. 339; People v. Harris, 126 N. Y. 423; McConkey v. Commonwealth, 101 Pa. St. 416; State v. Posey, 4 Strob. 142, (S. C.); Donaldson v. State, 2 Tenn. Cas. 427; Blackwell v. State, 29 Tex. App. 194, 15 S. W. 597; Johson v. State, 29 Tex. App. 150, 15 S. W. 647.

CORSON, P. J. The plaintiff in error was indicted, tried, and convicted in the circuit court of Faulk county of the crime of murder, and sentenced to the penitentiary for the period of his natural life. A motion for new trial was made and denied, and the case is now before us for review on writ of error.

The plaintiff in error, whom we shall hereafter denominate defendant, contends, first, that the evidence is insufficient to support his conviction; second, that the court erred in the

admission and exclusion of evidence; third, that the court erred in its refusal to give to the jury certain instructions requested by the defendant; fourth, that the court erred in its instructions to the jury given upon its own motion, and instructions given at the request of the state; and, fifth, that the court erred in denying the defendant's motion for new trial upon the ground of newly discovered evidence.

It appears from the evidence that the defendant and the deceased, Edward B. Coleman, were brothers, and resided together on a cattle ranch in the northwesterly portion of Faulk county, and, with the exception of a hired man who was occasionally in their employ, they were the only persons occupy-. ing the residence on said ranch; that on the afternoon of the 30th day of April, 1902, the deceased died from the effect of a gunshot wound inflicted upon his person; that the ball passed through the body of the deceased, practically destroying the heart; that the defendant, soon after the fatal shot was fired, left the deceased upon a bed, and rode some two miles or more to a neighbor, notifying him of the injury to his brother, and that he subsequently notified other neighbors of the fact that his brother was shot, and requested them to go with him to his residence. Mr. Solly, the first neighbor to arrive, found the deceased dead; and during the night of that day the remains were placed in a box prepared for the occasion, and the defendant early the next morning started with the body of his brother for Mellette, a point in Spink county about 50 miles distant from the ranch, where he intended to take the evening train for Winona, Minn., near which place he and his brother formerly resided. Defendant gave no notice to the authorities of Faulk county of the death of his brother, and no coroner's

inquest was held until after the body arrived at Mellette, where there was an autopsy of the same made; and subsequently an inquest was held at Faulkton by the proper authorities of Faulk county, and a preliminary examination had. The autopsy at Mellette seems to have been made at the request of the officers of Faulk county, who had heard from some source of the homicide, and who proceeded to Mellette to investigate the matter, resulting in the arrest of the defendant.

The evidence tending to prove the defendant guilty of the shooting of his brother was entirely circumstantial, and the motive claimed by the state to have caused the shooting of the deceased by his brother was to secure the money due upon certain life insurance policies, one of which had been issued to the deceased for $5,000 and of which the defendant had been made beneficiary by the will alleged to have been executed by the deceased in his favor, and also to secure the sum of $5,000 on a policy of insurance which had been obtained by the defendant by forging the name of the deceased to an application for the same, and which had been issued by the company, but had not in fact been delivered to the deceased, and also to cover up the alleged forgery of the name of the deceased on the second application for $5,000 insurance. It appears from the undisputed evidence that in January preceding the homicide the defendant applied to the Northwestern Mutual Insurance Company for a policy of $5,000 upon his own life, and that he made a will bequeathing the same to his brother, the deceased; that the deceased about the same time applied for a policy of $5,000 upon his life, which was issued to him, and this policy was found in the possession of the defendant, with a will purporting to have been executed by his brother, bequeathing the

amount secured by the policy, in case of his death, to the defendant.    There was also evidence tending to prove that the defendant some time in March applied for a further policy for himself for the sum of $5,000, and that he forged the name of the deceased to an application for a second $5,000 policy, and that the defendant gave his note for the premium for the two policies.    There was evidence on the part of the state tending to prove that the defendant had made contradictory statements in regard to the manner in which the shooting occurred to a number of different parties, including his neighbors near the ranch, his acquaintances at Mellette and at Faulkton, and as a witness before the coroner's jury.    There was also evidence tending to prove that the conduct of the defendant after the death of the deceased was, throughout, indicative of his guilt. There were a number of medical experts who testified as to the result of the autopsy, and their evidence tended to prove that the ball causing the death of the deceased entered the back near the spine, and made its exit from the front of the body; that it carried with it a portion of one of the ribs fractured by the ball which was found lodged in the muscles in the front portion of the body, near the aperture made by the ball; and the evidence of the experts tended to prove that it was not probable, if possible, that the wound could have been made by the deceased either accidentally or with suicidal intent.    The evidence of the experts tended to further prove that the death of the deceased must have resulted within a very few minutes after he received the fatal shot.    The record of the evidence is very voluminous, comprising several hundred pages of closely typewritten matter; and its reproduction, or even a summary of it, would extend this opinion to unwarranted length, and serve

no useful purpose. It must suffice to say, therefore, that, after a careful examination of the evidence, we are of the opinion that it was amply sufficient to justify the verdict of the jury. Of the weight of the evidence the jury were the exclusive judges, under proper instructions by the court.

The evidence on the part of the state tended to prove a state of facts not only consistent with the defendant's guilt, but entirely inconsistent with his innocence. State v. Lindley, 13 S. D. 248, 83 N. W. 257. The conduct and contradictory statements of the defendant cannot be reconciled upon any theory of his innocence of the crime charged. The defendant claims that the shooting was accidental, or that the deceased committed suicide from despondency resulting from large losses of cattle during the spring of the year. The jury evidently arrived at the conclusion that the theory of the state was the true one, and that the defendant was guilty of deliberately taking the life of his brother.

The first alleged error of law complained of is that the court erred in admitting Exhibit 17 in evidence, and allowing it to be used as a basis for comparison of the handwriting by the expert called as a witness by the state. Exhibit 17 is a letter addressed to Frank Turner, and purports to have been signed by defendant. This letter reads as follows: "Faulkton, S. D., 5-22, 1902. Mr. Turner, Dear Sir: I thought I would write you a few lines in regard to my grip, can I have it, I would like to have the clothing. Hoping to hear from you in the near future, I remain, Yours truly, J. P. Coleman." It is contended by the defendant that the use of this letter for the purpose of a basis for the comparison of handwriting was erroneous (1) for the reason that it was not proven that the letter

and signature were in the handwriting of the defendant; and
(2) for the reason that the letter was not properly in evidence
in the case as evidence tending to prove the guilt of the de-
fendant.    The evidence as to its having been written and signed
by the defendant was that, while he was in jail at Faulkton up-
on the charge for which he was tried, he handed this letter to
one of the guards of the jail, with directions to deliver the
same to Mr. Turner, and upon the further evidence of Miss
Mammie Coleman and William J. Coleman as to the genuine-
ness of the defendant's signature.    Miss Mammie Coleman,
sister of the defendant, testified, "Exhibit 17 is in Joseph's
handwriting."    And William J. Coleman, brother of the de-
fendant, testified, "Exhibit 16 and 17, purporting to be a letter
and envelope written by Joseph P. Coleman, and directed to
Frank Turner, is in Joseph Coleman's handwriting."    The
contention, therefore, that there was no proof that the letter
was written and signed by the defendant, is not sustained by
the record.    And in addition to this evidence is the admission
of counsel made at the trial.    It appears from the cross-exam-
ination of the witness Stoddard that this exhibit was assumed
by the defendant to be in the admitted and proved handwriting
of the defendant.    Mr. Stoddard, on cross-examination, was
asked the following question: "Mr. Stoddard, Exhibit 30,
Exhibit 26, Exhibit 2, Exhibit 24, Exhibit 1, Exhibit
33, Exhibit 17, are the proved and admitted signatures of
Joseph P. Coleman.   I wish you would state to this jury
whether or not the hand that signed these exhibits which I
have just enumerated signed the name 'Edward B. Coleman' to
the will, Exhibit 21?"   It will thus be seen that it was ex-
pressly admitted by counsel for the defendant that Exhibit 17,

with the other, contained the proved and admitted signature of
Joseph P. Coleman, and that six other exhibits which were ad-
mitted and proved to have been signed by the defendant were
also used as the basis of comparison of handwriting.  It is too
late, therefore, for the defendant to contend in this court that
it was not proved or admitted that the letter to Mr. Turner
purporting to have been signed by the defendant was not
proved or admitted to have been so signed.   There were, as we
have seen, a number of other exhibits purporting to have been
written and signed by the defendant, and as to the authentic-
ity of which there was no question, which were also used by
the expert in making his comparison.

The second contention of the counsel is clearly untenable.
The letter, in our opinion, was properly admitted as a link in
the chain of testimony showing that the grip or valise found
in the hotel at Mellette, and in which were the policies for the
first $5,000 of insurance issued to the defendant and the de-
ceased, with the will purporting to have been executed by each,
were found; it having been proven by the state that it had no
other valise or grip claimed by the defendant in its possession.

It is further contended by the defendant that Exhibits 1,
24, 23, 2, 26—being (1) medical examination sheet, (24) applica-
tion for insurance, (23) will of defendant, (2) medical certificate,
(26) application for additional insurance by the defendant—
were erroneously admitted in evidence over the defendant's
objection.  This contention is clearly untenable.  Under the
state's theory that the defendant applied for this insurance for
the purpose of inducing his brother to make such application,
and made the will bequeathing to his brother the insurance
money for the purpose of inducing the deceased to make a sim-

ilar will to himself, they were clearly admissible as tending to prove the motive of the defendant to take the life of the deceased—for the purpose of securing the amount of the insurance policy of the deceased. It was not only proper, therefore, but necessary, for the state to introduce this evidence, in order to show the plan of the defendant in carrying out his alleged scheme to secure the insurance money. It is quite clear, therefore, that the exhibits admitted and proven as being written or signed by the defendant personally were properly admitted in evidence; and, under any view of the law, they were properly admitted and used as standards in the comparison of the handwriting by the experts and the jury.

It is also contended by the defendant that the court must first find that the writings proven or admitted to be genuine are properly in the case as evidence before they can be used as a standard of comparison of handwriting, and that a writing not properly admitted in evidence as a part of the case cannot be properly used as a standard or basis for the comparison of handwriting. In Williams v. Conger, 125 U. S. 397, 8 Sup. Ct. 933, 31 L. Ed. 778, the supreme court of the United States uses the following language: "But where other writings admitted to be genuine are properly in evidence for other purposes, the handwriting of such instruments may be compared by the jury with that of the instrument or signature in question, and its genuineness inferred from such comparison." Mr. Greenleaf, in his work on evidence, § 578, says: "Where other writings admitted to be genuine are clearly in the case, here the comparison may be made by the jury, with or without the aid of experts." This was the old rule, but the modern rule seems to be that the writing used as a basis of comparison may

be proved or admitted to be genuine and used for such comparison without being used as evidence in the case. In 15 Am. and Eng. Ency. of Law (2d Ed.) p. 269, it is said: "The general tendency of the recent decisions is to a relaxation of the earlier rule prevailing in some jurisdictions, under which such evidence was excluded absolutely, and the admission of irrelevant papers for the purpose of comparison in accordance with the rule just stated. An examination of the grounds upon which this kind of evidence has been excluded will generally furnish a satisfactory principle for the decision of the particular case." An examination of the authorities cited by the learned author discloses the fact that the courts are quite equally divided upon the question, and in some of the states the old rule has been changed by statute. But in the view we take of the case at bar, we do not deem it necessary to decide the question at this time, as the writings used as a basis for comparison had been properly admitted in evidence as a part of the case on the part of the state.

It is further contended by the defendant that Exhibit 32, being a letter purporting to be signed by Edward B. Coleman, addressed to the insurance agent, in regard to the taking of $5,000 additional insurance, with envelope and postmark; Exhibit 27, a request for additional insurance, dated March 19, 1902, purporting to have been signed by Edward B. Coleman; Exhibit 4, a medical certificate of health of Edward B. Coleman, dated March 19, 1902, purporting to have been signed by his physician; Exhibit 30, a note dated March 19, 1902, given by J. P. Coleman to the insurance agent for the first premium on additional policies of the defendant and Edward B. Coleman; Exhibit 28, policy for $5,000 on the life of Edward B.

Coleman, dated March 24, 1902; Exhibit 33, a letter from J. P. Coleman to the insurance agent, dated April 4, 1902—were erroneously admitted in evidence by the court on the ground that the admission of these instruments, and proof that the purported signature of Edward B. Coleman was a forgery, tended to prove the commission of another crime by the defendant, and constituted prejudicial error, and also for the reason that the second policy for $5,000 in the name of Edward B. Coleman had not been delivered, and was still in the hands of the company's agent, and also for the reason that the policy was never in force, not having been delivered, and the insurance therein specified could not have been collected by the defendant under the purported will from Edward B. Coleman; first, because the will only applied to the first $5,000 insurance; and, second, for the reason that the policy had not been delivered at the time of the death of the deceased, Edward B. Coleman. As before stated, the evidence on the part of the state tended to prove that all of these writings purporting to be signed by Edward B. Coleman are forgeries, and it is claimed on the part of the state that this evidence was admissible upon two grounds: (1) That it tended to show that the defendant, as a motive for the crime charged, not only sought to recover the $5,000 insurance money applied for in January by Edward B. Coleman, but the additional $5,000 insurance which the defendant sought to obtain by these forgeries, and therefore the evidence was admissible as proving a further motive on the part of the defendant for taking the life of the deceased. It is further claimed by the state that the evidence was admissible upon the ground that the defendant, having committed

17 S. D.—39

these alleged forgeries, sought by the death of his brother to conceal the same and to prevent exposure, as the brother was intending in a few days to go to Mellette, on his way to Minnesota or Nebraska, and would probably discover the forgeries and the plot to take his life. While it is true, as a general rule, that the proof of an independent crime is not admissible for the purpose of proving the commission of a crime with which the defendant is charged, it seems clear from the weight of authority that, where proof of an independent crime furnishes the motive for the commission of the crime charged for which the party is on trial, it may be given in evidence for the purpose of showing such motive. In the case of People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193, the rule is thus stated in a headnote: "The general rule of evidence applicable to criminal trials is that the prosecution cannot prove against the defendant any crime not alleged in the indictment, either as a foundation for a separate punishment, or as aiding the proofs that he is guilty of the crime charged, and, while the exceptions thereto cannot be stated with categorical precision, generally speaking, and for the pur poses of the case under review, proof of another crime is competent to prove the specific crime charged only when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial." State v. Phelps, 5 S. D. 480, 59 N. W. 471; State v. Halpin, 16 S. D. 170, 91 N. W. 605. It will be observed, therefore, that the evidence admitted in the case at bar was clearly ad-

missible to establish a motive. This view seems to be fully sustained by the following authorities: Moore v. United States, 150 U. S. 57, 14 Sup. Ct. 26, 37 L. Ed. 996; McConkey v. Commonwealth, 101 Pa. 416; Sage v. State, 127 Ind. 15, 26 N. E. 667; Pontius v. People, 82 N. Y. 339; Dunn v. State, 2 Ark. 229, 35 Am. Dec. 54; State v. Kline, 54 Iowa 183, 6 N. W. 184; Walker v. State, 63 Ala. 105; State v. Fontenot, 48 La. Ann. 305, 19 South 111; Roberts v. Commonwealth (Ky.) 8 S. W. 270. The cases of People v. Corbin, 56 N. Y. 363, 15 Am. Rep. 427, and Coleman v. People, 55 N. Y. 81, cited by counsel for the defendant, are cases clearly within the general rule, and not within the exception. We are clearly of the opinion, therefore, that the evidence was admissible upon both of these grounds. We do not deem it necessary at this time to enter upon a discussion of the question of whether or not the second $5,000 insurance money would pass to the defendant by the alleged will of Edward B. Coleman, had that will been genuine, nor of the question as to whether or not the defendant could have recovered the second $5,000 upon the policy issued in the name of Edward B. Coleman, but still in the hands of the insurance agent. Taking the view that the defendant believed that he could recover the second $5,000, or the view that he was fearful that the forgeries of the name of Edward B. Coleman would be discovered by him, the alleged motive for the commission of the crime was greatly strengthened. It is true, the evidence on the part of the state of the procuring of the first $5,000 by Edward, and the alleged forged will of Edward bequeathing the same to the defendant, tended to prove a motive for the crime; but it was certainly competent for the state to prove a further motive on the part of the de-

fendant of securing the additional $5,000, or in covering up the forgeries claimed to have been committed in order to secure the same.

It is further contended by the defendant that the court erred in permitting certain questions to be propounded to the witness R. H. McCoy, a witness for the defendant, on cross-examination. Mr. McCoy was a banker at Mellette, and had testified that the defendant and the deceased had had some business with his bank; that in the early months of the year 1902 they had some money there on deposit; that the deposit was in the name of the defendant; and that he and his brother both drew checks against it "by virtue of their understanding with me." On being recalled, the witness was further asked on cross-examination by the state's attorney what this agreement or understanding was. He was also asked the following question: "What transaction took place between you and Ed and Joe with reference to the funds upon which Ed was to draw checks?" He replied, "It was funds that was received from their brother's life insurance—Frank's life insurance"— and proceeded to state what the arrangements were. It will be observed that the portion of the answer in reference to the deposits being funds that was received from their brother's life insurance was not responsive to the question, but no motion was made to strike out the irresponsive portion. We are of the opinion that the question was perfectly proper on cross-examination, and the state was not responsible for that portion of the answer not responsive to their question. As the witness had testified as a witness for the defendant that he had had transactions with the two brothers by reason of an agreement between them and himself, it was competent for the state to

ask the witness on cross examination what the agreement was.

At the conclusion of the trial the defendant requested the court to give the following instruction, which was refused, and its refusal assigned as error, which instruction reads as follows: "The court instructs the jury that although parol proof of the verbal admissions or statements of a party on trial in a criminal cause, where it appears that such admissions or statements were understandingly and deliberately made, often afford satisfactory evidence, yet, as a general rule, the statements of a witness as to the verbal admissions of a party should be received by the jury with grave caution, as that kind of evidence is subject to much imperfection and mistake. The party himself may have been misinformed or may not have clearly expressed his meaning, or the witness may have misunderstood him; and it frequently happens that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the defendant did say. But it is the province of the jury to weigh such evidence, and give it the consideration to which it is entitled in view of all the other evidence in the case." It is contended by the defendant that the instruction was applicable to the facts in this case, for the reason that the state had introduced in evidence statements made by the defendant on his way to Mellette and at Mellette during the days following Edward's death. The court by such instruction would clearly invade the privince of the jury, whom the law makes the sole judges of the credibility of witnesses and the weight to be given to their testimony. The statements made by the defendant proven by the state were not admissions of guilt, or claimed to be such by the state, but they were con-

tradictory statements made by the defendant on different oc-casions to different parties as to the cause and manner of the death of the deceased; and the trial court seems to have amply protected the rights of the defendant by stating to the jury that they were the sole and exclusive judges of the facts in the case, and the weight to be given to the testimony. In our opinion, it would not be proper for a court to express its views as to the weight to be given to any particular class of testimony admitted in evidence.

It is further contended that the court erred in refusing to give the following instructions: "If any one of the jury, after having considered all of the evidence in this case, and after having consulted with his fellow jurymen, should entertain a reasonable doubt of the defendant's guilt, then the jury cannot find the defendant guilty." This instruction, it will be noticed, is substantially a copy of an instruction requested in State v. Phelps, 5 S. D. 480, 59 N. W. 471, and refused by the trial court, and which refusal was held not to be error by the Supreme Court of this state. In that case the court said: "It is fair to presume that each juror possessed ordinary intelligence, and we are of the opinion that the court's charge, taken and viewed as an entirety, was abundantly sufficient to enable each juror to fully understand his relation to the case and to his fellow jurors, and to realize the individual responsibility resting upon him as a member of that jury, which, considered with the further fact that the jury was polled, convinces us that no juror consented to the verdict until his own mind was convinced of the defendant's guilt beyond a reasonable doubt." In the case at bar the court, in its charge to the jury, used the following language: "Your position in this case is a responsi-

ble one, and I would not say anything to lessen in any sense that responsibility.    *    *    *    And no man as to whose guilt there is a reasonable doubt in the minds of the jury, or of a juror, should be convicted.'' We are of the opinion that this instruction sufficiently calls the attention of the jurors to their individual responsibility, and, following the decision in State v. Phelps, supra, we must hold that the court committed no error in refusing to give the instruction.

The court, on its own motion, instructed the jury as follows: ''The evidence in this case is what is known as 'circumstantial'; that is, no person who has testified was an eyewitness of the alleged crime, and the state seeks to connect the defendant with the crime by showing a chain of circumstances leading up to it, and connected with it and the defendant; and this is circumstantial evidence.   And I will say to you that the evidence which has been received in this case is legal and competent, and if it is, in your mind, of such a character as to exclude every reasonable theory or hypothesis other than that of the defendant's guilt, beyond a reasonable doubt, then and in that event it should be given the same weight by you as would direct evidence of the fact alleged.    *    *    *    Circumstantial evidence, when competent, and when complete and satisfying to your minds, as has been charged, is entitled to the same weight that direct evidence is.'' It is contended by the defendant that the court by this instruction undertook to, and did, compare the probative force and effect of the two species of evidence—circumstantial and direct—and that when he did so he invaded the province of the jury.   We are of the opinion that the court committed no error in giving this instruction. The law is correctly stated therein, and such an instruction in

a case dependent entirely upon circumstantial evidence seems eminently proper, as jurors sometimes get the impression that unless there is direct testimony of the guilt of the accused they cannot safely convict. As we have seen in the case at bar, the only evidence relied upon for a conviction was circumstantial evidence, and hence an instruction upon that question was clearly proper. Certainly there can be no objection to the first part of this portion of the charge, and in the second part the court tells the jury that the evidence admitted was legal and competent, "and if it is, in your minds, of such a character as to exclude every reasonable theory or hypothesis other than that of the defendant's guilt, and beyond a reasonable doubt, then, and in that case, it should be given the same weight by you as would direct evidence of the fact alleged." This portion of the charge, with the qualifications, also states the law correctly. Sackett, in his work on Instructions to Juries, gives the following as a correct instruction: "The court instructs the jury that circumstantial evidence is legal and competent in criminal cases, and, if it is of such a character as to exclude every reasonable hypothesis other than that the defendant is guilty, it is entitled to the same weight as direct testimony." Schoolcraft v. People, 117 Ill. 277, 7 N. E. 649; United States v. Reder (D. C.), 69 Fed. 965; Carlton v. People, 150 Ill. 181, 37 N. E. 244, 41 Am. St. Rep. 346; 1 Greenleaf on Evidence (13th Ed.) § 13a. The instruction in the case of People v. O'Brien, 130 Cal. 2, 62 Pac. 297, cited by counsel for the defendant, was radically different from the instruction complained of in the case at bar, and clearly went beyond the true limits of the judge's right in charging a jury.

It is further contended by the defendant that the case

should be reversed for the reason that the court, in response to a statement made by counsel for the defendant, used the following language in ruling upon an objection made to the admission of a statement of the defendant at the coroner's inquest: "If he told the truth then, it won't hurt him now." While this remark of the court was perhaps not strictly proper in the trial of a case of the importance of the one before us, it can scarcely be seriously contended that it constituted ground for reversal of the judgment of the trial court. It may be proper to remark that trial judges in criminal cases cannot be too careful in making remarks in the presence of the jury calculated in the slightest degree to prejudice them against the defendant on trial.

One of the grounds for motion for new trial was that a juror who sat in the case was disqualified. It is urged on the part of the state that this does not constitute a ground for new trial, as the only grounds for new trial are designated by section 430 of the Code of Criminal Procedure, which provides: "The court in which a trial has been had upon an issue of fact, has power to grant a new trial, when a verdict has been rendered against the defendant by which his substantial rights have been prejudiced, upon his application, in the following cases only: (1) When the trial has been had in his absence, if the indictment or information is for felony. (2) When the jury has received any evidence out of court other than that resulting from a view of the premises. (3) When the jury have separated without leave of the court, after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented. (4) When the verdict has been decided by lot, or by means

other than a fair expression of opinion on the part of all the jurors. (5) When the court has misdirected the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial. (6) When the verdict is contrary to law or evidence. (7) When new evidence is discovered material to the defendant, and which he could not with reasonable diligence have discovered and produced at the trial.'' It will be observed that the ground that one or more of the jurors were disqualified is not made a ground for a new trial. Of course, if the juror had been challenged, and the court had denied the challenge, the question might have been presented to the court below and to this court as an error of law occurring at the trial, entitling the defendant to a new trial; but in the case at bar no challenge was interposed to the juror in the trial court, and hence no question of law is presented for review in this court. Under the Code, the fact that a juror was disqualified, merely, is not a ground for a new trial. This section is copied from the Code of Criminal Procedure of California; and in People v. Fair, 43 Cal. 137, the Supreme Court of that state, in speaking of the right of the defendant to a new trial, used the following language: ''The right of a prisoner to move for a new trial in a criminal case is given by section 440 of the criminal practice act, and the grounds upon which a motion is to be made are therein prescribed and enumerated. The statute declares that such a motion, when made, must be based upon one or more of the grounds in that section mentioned—'in the following cases only,' is the expression—and it clearly excludes all other grounds whatsoever.'' This case was cited with approval in the case of People v. O'Brien, 88 Cal. 483, 26 Pac. 362, in

which the court says: "The Code clearly excludes all other grounds than those alluded to in said section " In People v. Samsels, 66 Cal. 99, 4 Pac. 1061, the rule laid down in 43 Cal. is also approved. The Supreme Court of Idaho, in State v. Davis, 6 Idaho 159, 53 Pac. 678, held the same doctrine applicable to their statute on the subject of new trials, which is also a copy of the California Code. The Court of Appeals of Texas, in McMahon v. State, 17 Tex. App. 321, and the Supreme Court in Roseborough v. State, 43 Tex. 570, held the same doctrine applicable to the statute of that state, which was substantially the same as the section of our Code above quoted. It is contended by the defendant that the disqualification of a juror constitutes a ground for new trial, as coming within the provision of the clause as to newly discovered evidence; but this is clearly untenable, and is not supported by either the California, Idaho or Texas decisions. Even in jurisdictions where they have no statute specifically defining the grounds for new trials in a criminal case, the courts held that the disqualification of a juror is not a ground for new trial where the party has failed to interpose a challenge to the juror. Kohl v. Lehlback, 160 U. S. 294, 16 Sup. Ct. 304, 40 L. Ed. 432. In that case the Supreme Court of the United States calls attention to the fact that the case of Guykowski v. People, 1 Scam. 476, relied on by counsel for the defendant, was overruled in the case of Chase v. People, 40 Ill. 352. In Wassum v. Feeney, 121 Mass. 93, 23 Am. Rep. 258, the Supreme Court of Massachusetts says: "Where a party has had an opportunity to challenge, no disqualification of a juror entitles him to a new trial after verdict. This convenient and necessary rule has been applied by this court not only to a juror disqualified by

relationship, but, even in a capital case, to a juror who was not of the county or vicinage, as required by the Constitution. [Amherst v. Hadley] 1 Pick. 41, 42. The same rule has been applied by other courts by reason of alienage, although not in fact known until after verdict." It is quite clear, therefore, that under the section of the Code above quoted, and the decisions made upon similar provisions in other states, that the disqualification of a juror is not a ground for a new trial in this state, where an opportunity is had to challenge the juror, but no challenge has been interposed.

It is further contended by the defendant that he is entitled to a new trial upon the ground of newly discovered evidence. This evidence was in effect that a person residing at Millard, in Faulk county, would testify that the deceased said to the witness some time in March, 1902, that he intended to take out additional insurance upon his life. This evidence was cumulative, as similar evidence was given by the witness Nevins on the trial, who testified that the deceased had about that time made a similar statement to him. As a general rule, the courts decline to grant new trials upon the ground of newly discovered evidence where it is cumulative. Petefish v. Watkins, 124 Ill. 384, 16 N. E. 248; Wilson v. Seaman, 15 S. D. 103, 87 N. W. 577. In the latter case this court held, in effect, that a new trial might be granted upon the ground of newly discovered cumulative evidence if, in the opinion of the trial court, the evidence would probably produce a different result on the new trial, but, unless such would probably be the result, a new trial should be denied; adopting the rule laid down in the recent case of Oberlander v. Fixen, 129 Cal. 690, 62 Pac. 254. We are of the opinion that in the case at bar there was no probability

that the newly discovered evidence would change the result. The evidence upon this subject as given by Nevins was not disputed, and the witness was not in any manner impeached. It is reasonable to presume, therefore, that the jury believed the statements of the witness. This being so, it is quite clear that the cumulative testimony on which the motion for new trial was based would add no strength to the evidence as given by Nevins. But independently of the fact that the evidence was cumulative, "the granting or refusing of a new trial upon the ground of newly discovered evidence is largely in the discretion of the trial court, and, unless there has been a manifest abuse of such discretion, this court will not review the action of the trial court upon such motion." Wilson v. Seaman, supra. In our opinion there was no abuse of discretion in this case, and the court was fully justified in denying the motion for new trial.

Finding no error in the record, the judgment of the circuit court and its order denying a new trial are affirmed.