STATE, Respondent v. DOWLING, Appellant

(211 N.W.2d 572)

(File No. 11132. Opinion filed October 26, 1973)

John E. Goodrich, Pierre, for defendant and appellant.

Kermit A. Sande, Atty. Gen., Camron Hoseck, Asst. Atty. Gen., Pierre, Mick Grossenberg, State's Atty., Winner, for plaintiff and respondent.

DUNN, Justice.

Appellant was convicted of driving under the influence of intoxicating liquor by a Tripp County jury on November 19, 1971. His appeal presents several assignments of error which will be dealt with in the order of their importance.

The first and the most serious contention of the appellant is that the trial court abused its discretion in denying a continuance of the case until the results of a blood test could be received from Poisonlab, Inc., of Denver, Colorado. Appellant apparently disputed that a sample of blood which was tested by the State Laboratory at Vermillion was in fact his blood, and some 15 days before the case had been set for trial had arranged to have the blood sample taken by the state, and another blood sample of the appellant taken at St. Mary's Hospital in Pierre, forwarded to Poisonlab, Inc. of Denver, Colorado for comparison and identification. Appellant's attorney was notified on November 12th by telegram that these tests could not be completed in time for use at the trial which had been set for November 18, 1971 and appellant requested a continuance until such time as the tests could be completed and returned. This continuance was denied by the trial court.

This court has held that continuance of criminal cases is addressed to the sound discretion of the trial court. State v. Johnson, 76 S.D. 37, 71 N.W.2d 733. An accused is entitled as a matter of right to a reasonable opportunity to secure evidence on his behalf, if it appears that due diligence has failed to procure it, and where a manifest injustice results from denial of the continuance, the trial court's action should be set aside. State v. Wilcox, 21 S.D. 532, 114 N.W. 687. The question of abuse of this discretion is to be decided on the facts of each case. State v. O'Connor, 84 S.D. 449, 173 N.W.2d 48.

A cursory glance at the record might indicate that the trial court did act summarily in denying a motion for continuance in this case. However, the petition for continuance was not buttressed by any affidavit or even contention that would lead the trial court to seriously consider appellant's claim that the blood sample (Ex. 4) was indeed not his blood. It pointed out no irregularity in the taking, identifying, transporting, preserving or analysis of the blood by the State Laboratory. It was simply a flat statement that the appellant disputed the fact that the blood analyzed by the State was his blood.

The results of the blood test were definitely known to appellant and his counsel at the time of the preliminary hearing

on September 22nd, as it was mentioned in the transcript, and probably were known to them much earlier as the slip from the State Laboratory (Ex. 3) containing the results of the test was dated August 26th and state's attorneys are generally very generous in advising a defendant or his counsel of a blood test of .31. The appellant was arraigned on October 5th at the opening of the Tripp County term and upon a plea of not guilty the matter was set for trial on November 18th. At neither the preliminary hearing nor at the time of arraignment was a request made for a further blood test. It was not until November 3rd that appellant's counsel met with the state's attorney and made arrangements for the blood to be sent to Poisonlab, Inc., for analysis. The state's attorney wrote on November 5th ordering the state chemist to send the blood to Poisonlab, Inc. and the blood arrived at Poisonlab, Inc. on November 10th, which, in view of the people that had to take action in the matter, was not an unreasonable delay. Poisonlab, Inc. immediately wired back that it could not have the blood analyzed until November 30th or a period of twenty days from the receipt of the blood sample. Accordingly, if the blood sample had been flown to Poisonlab, Inc. on November 3rd (the first date that appellant had made any request for the same) there is no way that the results could have been available for the trial on November 18th. If the appellant really attached the importance to this blood test before trial that he now indicates, he was most dilatory in having the sample sent to Denver. The situation is similar to that indicated in State v. Phillips, 18 S.D. 1, 98 N.W. 171, where a continuance was not granted in order to procure a witness. The court in that case stated:

> "A defendant held to answer at the circuit court for the commission of a crime cannot safely rely on the promises of witnesses to appear at the trial and testify, but he must see that they are subpoenaed, or their evidence taken, when it can properly be done, *at the earliest possible date*, in order to be in a position to ask for a continuance on account of their absence."

■ Considering all of the circumstances of the case, including the failure of the appellant to give any basis for his claim that the blood was not his own, and the lack of diligence in

obtaining and forwarding the blood sample to Poisonlab, Inc., it is concluded that the trial court did not abuse its discretion in denying the motion for continuance on the eve of trial.

Appellant also contends that he should have been granted a new trial on the basis of new evidence that came into his possession after the trial. The new evidence is based on an affidavit from Poisonlab, Inc., which reads as follows:

"Valerie K. Rubin, Senior Chemist of Poisonlab, Inc., Denver, Colorado, being first duly sworn on her oath, deposes and states that she perfected certain laboratory tests concerning a certain blood sample sent from the Chemical Laboratory, at Vermillion, South Dakota, and received certain samples of blood from St. Mary's Hospital of Pierre, South Dakota.

"This affiant states that based on the blood sample sent from the Chemical Laboratory, of Vermillion, which was identified as that of Charles Dowling, and because of the sample furnished, this affiant acting for and in behalf of Poisonlab, Inc., is unable to immuncochemically identify the blood sample sent by the Vermillion laboratory as that of Charles Dowling.

"This affiant saith naught."

South Dakota Case Law holds that a motion for a new trial is addressed to the sound discretion of the trial court and the only function of the Supreme Court is to determine whether the trial court has abused its discretion, and the ultimate question for the trial court is whether there is a reasonable probability that newly discovered evidence would probably produce a different result on new trial. Skinner v. F. C. Krotter Co., 72 S.D. 622, 38 N.W.2d 145; Island v. Helmer, 63 S.D. 362, 258 N.W. 812; Mundt v. Munce, 71 S.D. 200, 23 N.W.2d 159; Hathaway v. Hathaway, 71 S.D. 310, 24 N.W.2d 33. In view of this case law it is important that we examine the facts of this case and whether this affidavit could possibly produce a different result on a new trial.

The appellant was arrested about 8:15 p.m. on August 21, 1971, near the intersection of Highways 183 and 40 in Tripp County, South Dakota, by Robert Parris, a state highway patrolman. After noting some erratic driving by the appellant, the highway patrolman turned around to follow appellant's pickup and caught up to it as appellant stopped on the highway apparently to check the loss of a rollaway bed from the back of his truck. After some routine sobriety tests appellant was placed under arrest for driving under the influence of intoxicating liquor. The patrolman then explained the appellant's right to him under the implied consent law and he was asked if he wished to take a blood test. After some discussion appellant reluctantly agreed to take the blood test. At approximately 8:55 p.m., in the presence of patrolmen Parris and Beicheim, blood was withdrawn from appellant's arm by Ardith Carl, a registered nurse, at the Winner Hospital. A sealed vial was produced by the patrolman, which had been furnished by the State Chemical Laboratory at Vermillion for this purpose. The seal was broken in the presence of the appellant, the registered nurse and the patrolmen Parris and Beicheim, and appellant's blood was placed in the vial again in the presence of the appellant and the highway patrolmen, and the registered nurse sealed the vial, initialed the seal and had the highway patrolmen also initial the seal, and the vial was then sent to the State Chemical Laboratory at Vermillion by mail. Donald Mitchell, the state chemist at Vermillion, received the vial in the mail on the morning of August 24th with all seals attached and unmolested and, after properly identifying it for his records, opened the same and proceeded to make the chemical tests for alcohol in the appellant's blood. The results showed an alcoholic content of .31 by weight in appellant's blood.

 ■ In view of the exacting methods used to protect the empty vial from contamination in any way and to identify and preserve appellant's blood sample after it was taken from his arm some 40 minutes after his arrest, it seems clear that the trial court did not abuse its discretion in denying the motion of appellant for a new trial on the basis of the affidavit from Poisonlab, Inc. The final conclusion of this affidavit is that "this affiant saith naught", and it is presumed that he could not testify to any more than "naught" at a new trial. This kind of evidence would not be

admissible to counteract the clear and convincing testimony as to the handling of appellant's blood after his arrest. The diligence of the appellant in producing the evidence in this affidavit for use at trial has already been considered in this opinion.

We have considered appellant's remaining assignments of error and find no merit in them.

The judgment of the trial court is affirmed.

All the Justices concur.