STATE of South Dakota, Plaintiff
and Respondent,

v.

Reid GERDES, Defendant and Appellant.

No. 11963.

Supreme Court of South Dakota.

Argued April 26, 1977.

Decided Oct. 31, 1977.

Rehearing Denied Dec. 7, 1977.

John P. Guhin, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Steven W. Sanford, of Braithwaite & Cadwell, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

As the result of a sale of a stolen tape player by the defendant he was arrested and charged on two counts, the first, third-degree burglary [SDCL 22–32–9] and the second, grand larceny [SDCL 22–37–1 & 2], alleged to have been committed in the course of a break-in at a radio shop. The defendant pleaded not guilty to both counts. The jury returned a verdict of acquittal on the burglary charge but convicted on the grand larceny charge. Defendant moved for a new trial alleging insufficiency of the evidence, legal inconsistency of the verdicts, and newly discovered evidence in the form of an affidavit executed by his brother, Kevin Gerdes, confessing that he alone had committed the offense. The trial court denied the motions, sentenced the defendant, and this appeal resulted. We reverse.

Drive-In Radio Repair and Modern Distributors (hereinafter Drive-In Radio) is a small retail business located in Sioux Falls, South Dakota. At approximately 4:30 in the morning on December 27, 1975, Sioux Falls police were dispatched to Drive-In Radio where they observed a door standing open with its lower pane of glass broken out. Several items were reported missing. Three days later Tony Reiter, a local high school student, brought a tape player into Drive-In Radio to have it installed in his car. It was recognized as one of the tape players that was missing from the December 27 break-in. Reiter informed the police and later testified at the trial that he had purchased the item from the defendant in the parking lot of the Sports Bowl situated in Sioux Falls, South Dakota. At the time of delivery the defendant had assured Reiter that the merchandise had not been stolen and that he could have it installed anyplace in town.

Mrs. Terry Paul, the wife of the proprietor of Drive-In Radio, identified the defendant as one of three or four youths she had observed browsing in the store the day before the break-in. She testified that they had arrived and departed in a light-colored van.

The defendant took the stand on his own behalf and denied any participation in the break-in. He testified that he had been at a local tavern the afternoon Mrs. Paul testified that he was at Drive-In Radio. He further testified that he had loaned his brother Kevin his van the night of the burglary while he himself spent the evening and morning hours up until 5:30 a.m. bar hopping. Defendant admitted that he did sell the tape player to Reiter but recalled little about the incident because he claimed to have been intoxicated at the time. He denied knowing that the tape player had been stolen but did testify that his brother Kevin had stated to him subsequent to the sale that he had gotten the tape player from Drive-In Radio.

When the brother Kevin was called to the stand he invoked the Fifth Amendment privilege against self-incrimination in response to any questions involving the Drive-In Radio or the evening at the Sports Bowl.

After the jury returned the verdict of conviction defendant filed motions for a new trial, on the grounds previously noted.

█ The defendant has neither briefed nor argued the question of sufficiency of the evidence and that issue is therefore deemed abandoned.

█ We deal first with the proposition that the defendant was entitled to a new trial because of the inconsistent verdicts. The general rule, and considered the majority rule, is that inconsistent verdicts do not provide a basis for reversal.[1] The landmark case of *Dunn v. U.S.* (1932) 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, set out the federal rule and the majority rule in an opinion written by Mr. Justice Holmes holding: "Consistency in the verdict is not necessary.

Each count in an indictment is regarded as if it was a separate indictment."[2] The rule stated in *Dunn* was supported by two propositions. The first being res judicata, and the second, the theory of lenity. The theory of lenity evolved from the case of *Steckler v. U.S.*, 7 F.2d 59, 60 (2 Cir. 1925) which stated:

"The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity."

The theory of lenity can be paraphrased in that the juries have the power, if not the right, to act irrationally. The *Dunn* case was expressly followed by this court in *State v. Sinnott* (1947) 72 S.D. 100, 30 N.W.2d 455, in affirming defendant's conviction on a count charging conspiracy to intimidate employees, while conceding that the conviction was inconsistent with a verdict of acquittal on another count charging conspiracy to commit assault and battery on the same employees. *Sinnott* parallels the present case where both counts were based on the same factual transaction, occurring at the same time and place, and that the evidence required to establish the one offense was not substantially different from that required to establish the other. Commenting that the authorities were in irreconcilable conflict as to the effect of inconsistency in criminal verdicts on informations charging two or more counts, the *Sinnott* Court held the evidence sufficient to support the count as to which defendant had been convicted and said that under such circumstances it would not inquire into the motives which prompted the jury to acquit him on the other count. We therefore hold that the trial court did not err in denying the defendant's motion on the grounds of inconsistency of the verdict.

1. See authority cited at 18 A.L.R.3rd 259.

2. *Dunn*, supra, 358–359.

We next turn to the trial court's ruling on the motions for new trial on the grounds of newly discovered evidence. Defendant made two separate motions. The first was supported by two affidavits, one, the affidavit of the witness Terry Paul recanting her identification testimony which described a van seen in the vicinity of the break-in the afternoon prior to the break-in and identifying the defendant as one of the occupants; and the second, the affidavit of Lynea Gries alleging new evidence in the form of a statement made by the defendant's brother, Kevin Gerdes, to affiant, to the effect that he alone had committed the crime. The second motion was supported by an affidavit of Kevin Gerdes, defendant's brother, admitting to the crime. Affiant was the same person whom the defendant had testified had admitted to him that he had committed the crime and who, when called to the witness stand, had invoked the Fifth Amendment privilege against self-incrimination with respect to any questions involving the alleged crime.

The state opposed the motions on three grounds: the first, being that the evidence suggested was merely cumulative; the second, that Kevin a juvenile, who would be prosecuted as a juvenile offender, was apparently taking the rap for his brother (Kevin was already in jail anyway on another matter); and the third, that the evidence was not newly discovered, since it was known but was merely not available, because Kevin exercised his constitutional right at the trial, which was not the fault of the state. After a hearing, which apparently consisted only of consideration of the affidavit and the arguments of counsel, the trial court determined that the new trial should not be granted on the grounds that the evidence was not newly discovered but merely newly available.

■ The granting or refusing of a new trial upon the ground of newly discovered evidence is largely in the discretion of the trial court, and unless there has been a manifest abuse of such discretion this Court will not review the action of the trial court upon such motion. See *Wilson v. Seaman*, 15 S.D. 103, 87 N.W. 577 (1901), and *State v. Coleman*, 17 S.D. 594, 98 N.W. 175 (1904). We have held that when there is nothing to indicate that the affiant's new evidence would be different from witnesses who had testified, it can only be considered cumulative. See *State v. Wood*, 69 S.D. 249, 9 N.W.2d 151.

In *State v. Laper*, 26 S.D. 151, 154, 128 N.W. 476, 478, this Court stated:

"The granting of a motion for a new trial upon the grounds of newly discovered evidence is not favored by the courts, and where the evidence is simply cumulative, or merely impeaching evidence, and would not probably change the verdict on another trial, the motion will ordinarily be denied; and, in order to obtain a new trial upon the ground of newly discovered evidence, defendant must show that he has used due diligence to procure the evidence at the former trial."

■ We will consider the motions and the court's disposition of them separately. The first is easily disposed of inasmuch as we hold that the trial court did not abuse its discretion in rejecting the motion on the affidavit of the recanting witness, Mrs. Paul. We are in agreement with the trial court that even if the testimony of the witness Mrs. Paul would change, it is highly unlikely that the verdict would change. *State v. Johnson*, 76 S.D. 37, 71 N.W.2d 733, *State v. Dowling*, 87 S.D. 532, 211 N.W.2d 572. We further hold that the trial court did not abuse its discretion in denying the motion on the basis of the Gries affidavit inasmuch as it was, at best, cumulative testimony to that of the defendant's to the effect that his brother had likewise admitted to him that he had committed the offense.

The second motion however requires closer scrutiny. The trial court overruled this motion on the basis that it was not newly "discovered" evidence since the defendant had previously testified to his brother's admission, but was merely newly "available" evidence, since the witness who, when called to testify at the trial, had invoked the Fifth Amendment privilege against

self-incrimination and had not waived this privilege until after the trial. The trial court went on to hold that newly *available* evidence is not a grounds for new trial.

 With this distinction we are unable to agree. While it is true that generally evidence obtained after trial, in order to be newly discovered, must have been unknown and unavailable to the accused himself at the time of trial,[3] a new trial on these grounds rests in the solemn discretion of the trial court, and depends largely on the credibility of the new evidence.[4] The rule is a judge-made rule and its purpose is to bring a finality to litigation.[5] The touchstones that appear to govern are two: the first being the showing of *diligence* as an excuse for not having been able to present the evidence at the first trial;[6] and the second being evidence that will convince the trier of facts that a different verdict will probably result.[7] We hold therefore, as the Supreme Court of Tennessee did in *Taylor v. State*, 180 Tenn. 62, 171 S.W.2d 403, 405, that although not newly discovered evidence in the usual sense of the term, its *availability* is newly discovered, to which the same principle applies. This Court was presented with a somewhat analogous situation in the case of *State v. Tappe*, 53 S.D. 22, 219 N.W. 882 (1928) when a defendant sought a new trial to use the testimony of his co-indictee who had been acquitted since his trial. The defendant contended that while the evidence was not newly discovered in the strict sense of the term it was evidence of which he could not avail himself at the time of the trial. This Court said: "The proper way to have established that fact would have been to call the proposed witness to the stand and interrogate him, giving him an opportunity to claim his prerogative if he saw fit to do so." It would appear counsel for Gerdes followed this directive to the letter.

 With respect to the credibility of the proffered affidavit, the defendant was convicted on circumstantial evidence. His defense was twofold. First, he offered an alibi for himself and then testified that it was not he but his brother Kevin who had committed the break-in. Kevin has now signed a statement under oath that he, in fact, committed the break-in alone, unaided, and so far as he knew without any knowledge on the part of anyone else. The trial court by its ruling apparently did not agree with the state's contention that it was merely cumulative, and we agree. It is clearly distinguishable from another witness coming in and relating what Kevin had told him as in the *Gries* affidavit previously discussed. Anyone who has watched a Perry Mason show can appreciate the effect on a jury if the witness himself testifies that he had performed the deed alone and unaided. If Kevin's testimony is as strong as indicated, it could reasonably be expected to change the result of a new trial.

We hold, therefore, that at the hearing on the motion for new trial upon the evidence of Kevin, the trial court should have examined the proposed witness under proper constitutional safeguards, again determining that he was aware of his constitutional rights as a matter of record, and that he was waiving them as to this incident at that time and from that day forward, and should have permitted examination as to the allegations in his affidavit and related matters, so that the trial court would be satisfied that his testimony was credible and that it would truly be available upon a new trial.

We reverse and remand for further proceedings in accordance with this decision.

WOLLMAN, J., concurs.

3. *People v. Collier*, 113 Cal.App.2d 861, 249 P.2d 72, 78 (1952); *State v. Weise*, 75 Idaho 404, 273 P.2d 97, 100 (1954).

4. *People v. Dickerson*, 131 Cal.App.2d 49, 279 P.2d 991, 994 (1955); *State v. Friedman*, 4 N.J.Super. 187, 66 A.2d 555 (1949).

5. *State v. Laper, supra* at 479.

6. *State v. Mitchell*, 46 S.D. 272, 192 N.W. 487 (1923); *State v. Laper, supra*.

7. *State v. Johnson, supra*; *State v. Dowling, supra*.

ZASTROW, J., concurs specially.

DUNN, C. J., and PORTER, J., dissent.

ZASTROW, Justice (concurring specially).

I concur in the majority opinion.

Although this decision has reaffirmed the right of a jury to return inconsistent verdicts, it should not be considered as authority that the trial court need not attempt to prevent inconsistent verdicts by proper instructions. Although a verdict of acquittal for burglary is not always inconsistent with a conviction for larceny (see Annot., 18 A.L. R.3d § 22[a], p. 332) under the facts of this case, the larceny could only have been committed upon the successful burglary of the Drive-In Radio Shop. The court should have given an instruction which would have properly apprised the jury that if it found the defendant was not guilty of burglary, it must, likewise, acquit him of grand larceny.

DUNN, Chief Justice (dissenting).

I would affirm.

The jury was given a full opportunity to weigh Reid Gerdes' defense that it was really his brother Kevin who committed the grand larceny. The evidence from Kevin was just as "available" at time of trial as it is now. I have considerable doubts about Kevin being willing or, in fact, able to waive his Fifth Amendment rights at any hearing provided by the remand. This crucial decision could only come when he is called to the stand in a second trial for Reid. This "cat and mouse" game by the two brothers makes a laughing stock out of police officers and prosecutors and should not be permitted by the courts.

I am authorized to state that Justice PORTER joins in this dissent.